Clarence Gallaway, et al., Plaintiffs-Appellants, v. Barbara K. Schied, Defendant-Appellee, and Apex Mutual Insurance Co., Garnishee Defendant-Appellee.

Gen. No. 50,325.

First District, First Division.

July 11, 1966.

Warren J. Hickey, of Chicago (William J. Harte, of counsel), for appellants.

Zlatnik, Gaines, Boyer & Shepp, of Chicago (Alan I. Boyer, of counsel), for garnishee defendant-appellee.

No brief filed for defendant-appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiffs obtained default judgments in the aggregate sum of $6,050 on January 20, 1960, against defendant, Barbara Schied for personal injuries and property damage suffered by them through her alleged negligence in the operation of a motor vehicle. To satisfy said judgments, plaintiffs filed garnishment proceedings against Apex Mutual Insurance Company, her insurer. Apex defended on the ground that it was not liable due to Barbara's failure to comply with the cooperation clause of the policy and the court sustained this defense, dis-

charging the garnishment action. Plaintiffs appeal from this order.

We review the essential facts and events in their chronological order. The accident occurred on December 12, 1959, within the effective period of the policy. On December 15, 1959, Barbara reported the incident to Apex by phone and on December 28, 1959, she forwarded her written report. It was a regular accident report form which she filled in as required, except that in lieu of giving details of the accident she wrote: "The accident is on police report."

Plaintiffs filed their suit for injuries and damages and caused summons to be served on her which summons she promptly forwarded to Apex. The record indicates that Gillin and Richter, attorneys hired by Apex, filed appearance for Barbara on February 29, 1960, and an answer contesting the action on March 7, 1960. In the meantime, Apex forwarded a letter dated March 4, 1960, to Barbara addressed to 3419 N. Lowell Avenue, Chicago, the address given in the policy and in the report as her place of residence. Apex informed her that Gillin and Richter had been retained to represent her in the suit; that it would be necessary to give the attorneys full cooperation; that she contact them within five days relative to the defense, giving the attorneys' phone number, and that she keep Apex fully apprised of her whereabouts, specifically if she intended to leave her present address for a period in excess of two days. Her attorneys proceeded to file interrogatories and take depositions of the plaintiffs.

In a letter dated June 24 and addressed to Barbara at the Lowell Avenue address, the attorneys advised her that her deposition was scheduled for July 19, 1960, and that she appear at their office on the latter date.

On July 23, 1960, a letter similarly addressed to the insured, advised her that the deposition was rescheduled

to August 15, 1960, and that it was necessary for her to appear at counsels' office a half hour before the time designated.

On September 7, 1960, another letter was addressed to her at the Lowell Avenue address and to "General Delivery, Chicago" by the attorneys wherein it was stated that when she failed to appear on August 15, 1960, counsel phoned her employer and was informed that she had terminated her employment; that a call to her mother resulted in being informed that Barbara had moved away two weeks previously and had given her new address as "General Delivery, Chicago"; that it was imperative that she immediately contact the attorneys' office relative to her deposition. The letter concluded with a warning that it was necessary for her to cooperate under the terms of her policy with Apex; that if they received no cooperation from her in the future they would have no alternative but to withdraw from the defense of the litigation; and that the insurance company would assume no liability for any judgment rendered against her or be liable for costs in defending the action against her. Both letters, the one addressed to Lowell Avenue and the one addressed "General Delivery" were returned unclaimed.

Apex forwarded a "Reservation of Rights" * letter dated September 8, 1960, to Barbara at the Lowell Avenue

---

* "We reserve all rights and defenses which we have under the above numbered policy.

"We further notify you that any investigation we may undertake or any defense on your behalf arising out of any action or actions instituted against you in any Court of law does not, and shall not be constituted and considered a waiver of any of our rights nor admission of any obligation or liability to defend such action on your behalf.

"The intent of this notification is to preserve the rights of all parties hereto and to permit an investigation by us of the cause of the accident without regard to the liability, or admission of any liability on our part."

address and to "General Delivery." These were returned unclaimed.

A telegram dated September 30, 1960, and forwarded to the Lowell Avenue address by Apex, contained a statement that she failed to cooperate and unless this was corrected Apex would remove itself from her defense. This telegram was returned unclaimed.

In a letter dated October 4, 1960, addressed to Barbara and forwarded to the Lowell Avenue address, the attorneys enclosed copies of plaintiffs' notice and petition filed on October 17, 1960, for a rule to show cause based upon her failure to appear for deposition. The letter referred to the prior letters and the necessity for her to cooperate with Apex and the attorneys. This letter was returned with the legend "Move, Left No Address." On October 17, 1960, a rule to show cause issued returnable October 25, 1960. Presumably, the rule was continued to a later date because the record discloses that on November 17, 1960, a hearing on the rule was had and the court, finding defendant at fault, struck her pleading and declared her in default. A default against her was entered with an order that the complaint be taken as confessed against her.

In the meantime, on or about October 27, 1960, Apex hired a private investigator to locate the insured. The investigation was not effective in locating the whereabouts of Barbara and written reports, submitted on January 18 and January 26, 1961, reported some information that she could be on the West Coast, possibly San Francisco or Los Angeles.

At the garnishment stage, counsel stipulated that a police officer investigating the incident would state that Barbara "was driving along, fell asleep, and was involved in the accident" and that he would further say that he "observed" an odor of alcohol on her breath.

██ It is elementary that any suit brought by the plaintiffs on the policy would be subjected to all defenses

against liability Apex might have if the insured had sued. Plaintiffs had no greater rights than those of the insured. Zitnik v. Burik, 395 Ill 182, 69 NE2d 888 (1946); Firebaugh v. Jumes, 341 Ill App 1, 92 NE2d 790 (1950); Schneider v. Autoist Mut. Ins. Co., 346 Ill 137, 178 NE 466 (1931). Therefore, any material breach by Barbara would relieve Apex of liability.

Plaintiffs argue, however, that the undisputed evidence demonstrates that the absence of the insured was not a material breach of the insurance contract. They say that an absolute compliance is not necessary, especially "where cooperation is not only not beneficial but harmful to the insured." [sic] (insurer.)

■■ It is generally held that the lack of cooperation by an insured in failing to attend the trial or to testify, must be substantial or material and that a technical or inconsequential lack of cooperation is insufficient to void the policy. 60 ALR2d p 1150. Whether the failure to appear, attend the trial, give testimony, or whether any other conduct and actions of the insured create a substantial or material breach of the policy, is a question of fact to be determined from the facts and circumstances of the particular case.

In Schneider, our Supreme Court made the statement (p 140) that: "Without the presence of the assured and his aid in preparing the case for trial the insurance company is handicapped and such lack of cooperation must result in making the action incapable of defense." In Shalita v. American Motorists Ins. Co., 266 App Div 131, 41 NYS2d 507, ret and app den 266 App Div 885, 44 NYS2d 101, where the insured disappeared prior to the commencement of a personal injury action against him, it was held that he had breached the policy even though his testimony as to the cause of the accident might have been adverse to the insurer, since his absence was a serious handicap to the insurer in a settlement of

the claim or upon a trial for the determination of damages.

In Indemnity Ins. Co. of North America v. Smith, 197 Md 160, 78 A2d 461 (1951) the court stated that the failure of the insured to comply with the condition requiring him to attend hearings and trials precludes recovery from the insurer by the person injured, even though cooperation might not have defeated the plaintiff's claim for damages. See also, Royal Indemnity Co. v. Rexford, 197 F2d 83 (1952 CA 5th Fla) wherein the court approved, arguendo, the statement that the very fact that an insured is absent from the trial without explanation is prejudicial to the rights of the insured and has a material effect on the verdict.

In the case at bar, because of the failure of the insured to appear for deposition, her pleadings were stricken and the issue of liability was determined adversely. The opportunity to contest the issues of contributory negligence, due care, proximate cause, and of cross-examination, etc., were precluded. The circumstances concerning the degree of impact, res gestae reaction, if any, and incidents that might assist in the true determination of damages were denied to the defense. There can be no doubt that the conduct of the insured in failing to cooperate substantially and materially affected the insurer and its rights.

Plaintiffs next contend that Apex must demonstrate that it was actually prejudiced by the failure to cooperate. Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482 (1958) dealt with the defense of failure to comply with a cooperation clause. The court found that misrepresentation by the insured as to the identity of the car constituted a breach of the clause. The issue of whether the insurer must show prejudice was raised. The court found no clear Illinois precedence in this area and further that there was a divergence of opinion

stemming largely from the characterization of the clause as either a condition precedent or a condition subsequent, with prejudice necessary only to establish a breach of the latter. The court said (p 48):

> In the Schneider case [346 Ill 137 (1931)], there was unquestionable prejudice to the insurer; in the Harrison case [255 Ill App 263 (1929)] the court recognized the conflict among the court of other jurisdictions and held that the question of the insured's co-operation was for the jury to determine; in the Rowoldt case [305 Ill App 93 (1940)], the court held that the insurer had waived the benefit of any breach and indicated further, in strong dictum, that prejudice to the insurer had to be shown before a breach could be established.

The court after reviewing automobile liability insurance and its relationship to the public, said (p 49):

> The courts cannot condone or support a doctrine that might ultimately make the cost of insurance protection prohibitive. Compliance with its terms is therefore vital to all who may benefit, either directly or indirectly, from its provisions. For this reason we are of the opinion that strict compliance is in the best interest of the public and not defendant's [insured's] theory that failure to comply with the co-operation clause must be shown to be prejudicial to the insurer in order to constitute a breach which would allow the insurer to disclaim liability.

In Potomac Ins. Co. v. Stanley, 281 F2d 775 (CA 7th Ind) the failure of the insured to attend the trial and aid in the defense was held to be prejudicial per se. Other cases have held that at least prejudice will be presumed as a matter of law from the substantial wilful breach by the insured of the cooperation clause. 7 Am Jur2d, § 176, p 509.

■ We believe the conclusion expressed in the Keller case to be sound law and hold that if there is a substantial or material lack of cooperation found as a matter of fact, the insurer is not required to establish prejudice or detriment thereby in order to disclaim liability.

Plaintiffs further contend that Barbara did cooperate with Apex, having promptly notified it of the occurrence, forwarded the summons and complaint and filed the insurer's accident report. They question the proof that she did know she was required to give her deposition. Plaintiffs say that "she had some time in the summer of 1960 merely departed from the Chicago area for San Francisco. She did *not*, at any time *refuse* to cooperate."

■ The letters addressed and mailed to Barbara prior to August 15, 1960, that is, on March 4, March 7, June 24, and July 23, 1960, were not returned. In the absence of evidence to the contrary, such proof raises the presumption that they were received by the addressee in due course of the mail. Loving v. Allstate, 17 Ill App2d 230, 149 NE2d 641 (1958). When the receipt thereof is not denied it becomes a presumption of fact. 18 ILP Evidence, § 28, p 166. The proof established the fact that Barbara left the Lowell Avenue address, where she lived with her mother, about two weeks prior to August 15, 1960, and presumably was there when the prior letters were addressed and forwarded.

■■ The trial court indicated that Apex exercised good faith and reasonable diligence to contact its insured when it specifically remarked: "I don't see they could do anything more than they did." The conduct of the insured here clearly indicated a wilful refusal to respond and cooperate. Apex, in our opinion, used reasonable diligence in its attempt to ascertain her whereabouts and to procure her assistance as required by the policy.

The record indicates that the hearing on the question of damages and judgment for plaintiffs was had on January 20, 1961, "after due notice to all parties and

their counsel," and that plaintiffs had previously, on December 20, 1960, upon due notice, waived their right to trial by jury, having withdrawn their jury demand. It is further conceded that counsel for the insured was present but was prevented from cross-examining the plaintiffs relative to the issue of damages. The court instructed counsel to sit down and not examine the witnesses and so he remained present but did not participate.

Plaintiffs, conceding the court's ruling was error, say: "Still they did not withdraw, nor did they make objection to the judge's ruling, nor did they appeal his action. And with good reason. While they ostensibly were representing the insured, they were in fact representing the insurer."

Plaintiffs contend that "since Apex's counsel continued to represent and still represent insured following the purported breach of her insurance contract, it has waived the breach of the cooperation clause." They argue that the attorneys continued to defend the insured after her disappearance and still do, having not withdrawn; that the attorneys were present during all hearings in the case in chief and most significantly during the hearing on damages; and that "an insurance company which continues in a case after notice and knowledge of a purported violation of the 'non-cooperation' clause and where it has never informed the insured of a 'reservation of rights' thereby waives the defense of non-cooperation."

It has long been settled that an insurer will not be estopped from setting up the defense of noncooperation by participating in the defense of the action against the insured, *if,* at the same time, it gives notice to the insured that it does not waive the benefit of such defense. Hinchcliff v. Insurance Co. of North America, 277 Ill App 109, 125 (1934); Ancateau v. Commercial Cas. Ins. Co., 318 Ill App 553, 48 NE2d 440 (1943).

When the insured herein failed to cooperate by not appearing for the deposition hearing on August

126

15, 1960, and did not communicate with Apex, it forwarded, on September 8, 1960, a disclaimer of liability and a reservation of all rights and defenses which it had and stated that any further investigation or defense by it in her behalf was not to be considered a waiver of its rights. This, in our opinion, constituted a prompt disclaimer of liability and a proper reservation of insurer's rights as to preclude any claim of waiver. As to the contention that there was no proof that the insured received the letter of September 8, we find, in 7 Am Jur2d, § 184, p 523, the following statement:

> And in a case where the insured has disappeared and the insurer makes diligent but unavailing efforts to find him, the insurer's mailing of a notice of disclaimer to the insured will generally be held sufficient to protect the insurer against a waiver or estoppel to assert a breach of the co-operation clause by the insured, even in the absence of affirmative evidence to show that the insured actually received the notice of disclaimer. (Citing authorities.)

This, to us, is sound law and we adopt it to the situation in this cause. Barbara's wilful disappearance cannot be allowed to prevent Apex from disclaiming liability and proceeding under a reservation of rights. Furthermore, the insured suffered no damage by the efforts of Apex in her behalf and the doctrine of waiver, or estoppel in pais can have no application under the circumstances in this case. See Durbin for Use of Ferdman v. Lord, 329 Ill App 333, 68 NE2d 537 (1946).

For the reasons herein expressed the judgment of the Circuit Court is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.