Lawrence M. Janssen and Joyce V. Janssen, Plaintiffs-Appellees, v. Lloyd E. Worthington, Defendant, State Security Insurance Co., Citation Respondent-Appellant.

Gen. No. 67–177.

Second District.

September 23, 1968.

Diver, Diver, Ridge & Brydges, of Waukegan, for appellant.

Lidschin & Pucin, of Waukegan, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

In July, 1965, the defendant State Security Insurance Company, issued a policy of insurance to the defendant, Lloyd E. Worthington, who gave his address, at that time, as 3220 Gilboa Avenue, Zion, in Lake County. On

August 14, 1965, the defendant Worthington's automobile collided with plaintiffs' auto, causing personal injury and property damage. On August 16, 1965, Mrs. Worthington called the insurance company to report the accident, giving their address as 3021 Galilee, Zion, and the written report, filed on August 24th, also showed that address.

Plaintiffs' complaint was filed on September 14, 1965. On September 20th, Mrs. Worthington called the insurer and left her sister-in-law's phone number.

In November, the plaintiffs filed written interrogatories and, shortly thereafter, the attorneys for the insurance company sent a letter to the defendant, addressed to 3220 Gilboa, requesting a conference. The letter was not returned. In December the attorneys for both sides set up a deposition to be taken in the following February. On February 3, 1966, the attorneys for the insurance company addressed a letter to the individual defendant at the Gilboa address, advising him of the deposition. That letter was not returned. When the attorneys for the insurance company were unable to contact the defendant, the deposition was continued to April 26th, and again they sent a letter to the defendant at 3220 Gilboa informing him of the new date. This letter was not returned.

On April 25th, defendant's attorneys called plaintiffs' attorney to say that the defendant would be unavailable for his scheduled appearance on the 26th and, on April 28th, subsequent to defendant's failure to show and upon receipt by defendant's attorneys of plaintiffs' notice on a motion to debar, another letter was written to Worthington at 3220 Gilboa, stressing the necessity of his appearance on May 2 and stating that his failure to do so would prompt his attorneys to withdraw. This letter was returned to the sender.

On May 5, two letters were sent defendant, (one by certified mail), addressed to 3021 Galilee. Both were returned to defendant's attorneys.

126

The motion to debar was continued to May 6th, at which time it was ordered that defendant pay $180 in attorneys' fees and be debarred in the event of his failure to comply. Also on May 6th, a motion by defendant's attorneys to withdraw was entered and continued to May 23 for the purpose of sending out a new notice of withdrawal to defendant. With this intent, certified letters were directed to defendant at each of his three known addresses; all were returned.

On May 13th, defendant's attorneys requested that a State Security investigator be sent out to locate the assured. The investigator's report of the 16th was negative and, subsequently, a leave to withdraw was granted on May 23, 1966.

Two days later, defendant called and gave a new address and telephone number. A letter was directed to him at that address, which was again returned.

On June 8, 1966, Worthington called, stating he would be in the office on that "Thursday," but failed to show. An investigator was directed to the last given address, 6029 S. Eberhardt, Chicago. On June 15, Mrs. Worthington called and made an appointment for her husband on the following day.

Defendant came to the office on June 22nd, was informed of the $180 judgment and was to return on the 24th, an appointment he failed to keep.

The motion to debar, filed by plaintiffs on May 26th, reads, in part, as follows:

". . . Thereafter, at defendant's request, a new discovery deposition was set for hearing on April 26, 1966, at 2:00 p. m. with the assurance that the defendant would be available on that date. Thereafter, on April 25, 1966, plaintiffs' attorneys received a call from the office of defendant's attorneys inquiring whether or not plaintiffs would be available for the deposition and were advised that plaintiffs had been notified and would appear. Thereafter, on

April 26, 1966, the date set for the deposition afore-said, defendant's attorneys called plaintiffs' attorneys to advise them that the defendant would not be present for the deposition.

"That the plaintiffs have been seriously inconvenienced and put to unnecessary additional expense by reason of the settings aforesaid and the cancellations thereof, without furnishing plaintiffs or their attorneys ample time to rearrange their schedules. . . ."

The motion and the resulting judgment would seem to arise from the failure of defendant's attorneys to give ample notice on their inability to appear. Yet during the aforementioned meeting of June 22nd, testimony indicates that Worthington was informed by his attorneys that he, Worthington, would be expected to pay the $180 before they would seek to reenter the case.

Let it be noted that the record shows no indication that the insurance company attempted to contact Worthington by the use of the phone numbers left with the company, in an effort to learn the whereabouts of the individual defendant.

Between May 23, 1966, when defendant's attorneys were granted leave to withdraw, and July 28, 1966, the trial date, (during which time the defendant appeared personally in the office of the attorney and while the company had the correct address), there was no effort on behalf of the company to reenter the case.

The trial was held in the absence of defendant and his attorneys and judgment was rendered for the plaintiff, Lawrence M. Janssen, in the sum of $1,450 and for the plaintiff, Joyce V. Janssen, in the sum of $3,500.

A citation to discover assets was then issued and the defendant insurance company interposed an affirmative defense, that the individual defendant had breached the policy of insurance by noncooperation. The trial court

rejected this defense and rendered judgment against the insurance company.

The insurance company brings the case to this Court raising the single issue that, under the facts of the case, the individual defendant has breached the noncooperation clause and, therefore, the company is not liable.

The insurance company brief before us contains a statement of the facts, an argument and one citation, Gallaway v. Schied, 73 Ill App2d 116, 219 NE2d 718 (1966). That case may be easily distinguished from the case at bar, since in that case, attorneys for the insurance company addressed correspondence to the individual defendant at an address where she actually lived. In this case, the insurance company knew within two days of the accident that the defendant had moved. Despite the telephone call from defendant's wife, the address shown on the written accident report and a subsequent phone call informing the company of a telephone number at which defendant might be reached, the insurance company sent their letters to a former address. Not until a motion to debar was filed did the insurance company start sending letters to any other address. The insurer knew the correct address on August 16, 1965, and yet, did not send any mail to that address until May of 1966. Notice to an address which is known to be wrong is no notice at all.

If notice was not sent defendant at his correct address, he can hardly be charged with noncooperation since he was not given the opportunity to cooperate. In quoting the trial court in the case of Penn v. Progressive General Ins. Co., 74 Ill App2d 32, 36, 219 NE2d 857 (1966), the court said ". . . there is no evidence that she ever received any notice at all from the company. She never got the chance not to cooperate." The court further held that the defense of noncooperation is affirmative and the burden is on the defendant insurance company to

129

establish, by a preponderance of evidence that the individual defendant failed to cooperate. See also Gregory for Use of Cusimano v. Highway Ins. Co., 24 Ill App2d 285, 297, 164 NE2d 297 (1960).

In the case of Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Owens, 238 F2d 549 (1956), the Court said at page 550:

> "The problem of noncooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure cooperation from an apathetic, inattentive, or vanished policyholder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. Indeed, such insurance is made mandatory in many states. It would greatly weaken the practical usefulness of policies designed to afford public protection, if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him."

As stated in Jackson v. Bankers Indemnity Ins. Co., 277 Ill App 140, 156 (1934), ". . . What constitutes cooperation (or lack of it) on the part of the assured, within the meaning and effect of cooperation clauses, is usually a question of fact." The trial court heard and saw the witnesses and examined all of the evidence and concluded that the insurance company did not prove the affirmative defense of noncooperation. On the basis of the record before us we cannot say that the trial court committed any error.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.