**Marilyn R. HART, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 68-1154.**

United States District Court,
D. Massachusetts,
May 28, 1970.

---

2. There is no indication in Law Week that the Government petitioned for a writ of certiorari in the *Heffner* case.

Nathan Greenberg, Boston, Mass., for plaintiff.

Bruce P. Gilmore, Jr., Avery, Dooley, Post & Avery, Boston, Mass., for defendant.

## OPINION

CAFFREY, District Judge.

This is a civil action in the nature of a bill to reach and apply, filed in this court upon the basis of diversity jurisdiction. Plaintiff is a citizen of Massachusetts. Defendant is a corporation organized under the laws of the State of Illinois. The amount in controversy exceeds $10,000. After trial I find that the facts which give rise to the controversy are as follows:

Prior to October 9, 1964, defendant issued a policy of liability insurance covering a Volkswagen automobile jointly owned by Robert G. Berquist and his stepson Ronald E. Dimmick, both residents of Illinois. At 2:00 a. m., on October 9, 1964, plaintiff was a passenger in the Volkswagen when it became involved in a one-car accident on Commonwealth Avenue, Boston, while the car was being operated by Ronald E. Dimmick. She sustained personal injuries in the accident and, thereafter, brought an action in tort for personal injury against Dimmick in Superior Court, Suffolk

County, Commonwealth of Massachusetts, where she recovered a default judgment against him in the amount of $10,343.10, upon the basis of which an Execution issued against Dimmick in the amount of $12,058.47.

The instant case is brought to reach and apply the liability of defendant under the policy of insurance it issued covering Dimmick and Berquist. Mr. Dimmick has passed away since the filing of the action in this court. At the trial, plaintiff offered in evidence the Execution referred to above and the liability insurance policy issued by defendant to Dimmick and Berquist, and rested. The remainder of the trial consisted of presentation of evidence on behalf of defendant, offered to support the defense of lack of cooperation on the part of Dimmick as grounds for defeating liability under the policy.

The evidence establishes that the Boston law firm of Avery, Dooley, Post & Avery was retained by defendant to represent its insured, Dimmick, in the tort action in Suffolk Superior Court, and that an answer, appearance of the law firm, claim of jury trial, and interrogatories to plaintiff Marilyn R. Hart were filed in that court. Answers to the interrogatories were served on Avery, Dooley, Post & Avery by plaintiff. Two statements, one signed by Dimmick and the other a transcript of a telephone conversation held April 19, 1965 between Dimmick and one Soderstrom, a claims investigator acting on behalf of the insurance company, were put in evidence as defendant's Exhibits Q and S. Exhibit Q is a three-page handwritten statement signed by Dimmick, executed at the Boston Navy Yard on October 20, 1964. In the course of this statement Dimmick made the representation:

"I picked up Marilyn James for a date * * * I drove straight out to Allston, Mass. to a friend's house. My friend's name is Jesse Johnson * * * We stayed there visiting until about 1:30 a.m. There was no drinking at any time * * *."[1]

Exhibit Q is the transcript of the telephone conversation between Dimmick and Soderstrom, which was recorded. It includes the following:

"Q. Is this record being made with your full knowledge and consent?

A. Yes.

Q. Where had you been prior to the accident? Were you at Mr. Johnson's house?

A. I was at Mr. Johnson's house.

Q. And had you been at the Hill Billy Ranch prior to that?

A. Yes, sir. I was in the Hill Billy Ranch that night.

Q. How long had you been at the Hill Billy Ranch?

A. A couple of hours.

Q. Were you drinking there?

A. I had a couple of drinks there.

Q. What were you drinking?

A. Beer—Budweiser I believe it was.

Q. Were you drinking full size bottles?

A. 12 oz. bottles.

Q. Could you give me an idea of how many beers you had?

A. I had five—four—."

The tort case was called in October 1967 for assignment for trial, but was continued at plaintiff's request. Thereafter, her counsel served a Notice to Admit Facts on the firm of Avery, Dooley, Post & Avery, which was duly forwarded to Dimmick, but Dimmick never responded to or corresponded with that law firm with reference thereto although they obtained at least three extensions of time for filing of answers to the Notice to Admit Facts and wrote at least three letters to Dimmick in Illinois requesting his cooperation and assistance in obtaining proper answers. A notice to take deposition of Dimmick was filed in late 1967 and served on Avery, Dooley, Post & Avery who notified Dimmick by mail

---

1. Plaintiff's maiden name was Marilyn James.

of the pendency of the notice. Thereafter a motion to quash the notice of deposition and for a protective order was denied by a Justice of the Superior Court, who ordered Dimmick to appear on February 12, 1968 for the taking of his deposition. Avery, Dooley, Post & Avery sent a notice to Dimmick on January 18, 1968, by certified mail, return receipt requested, advising him that a Justice of the Superior Court had entered an order directing him to come to Boston for the taking of his deposition. The letter also requested him to come to Boston for the deposition. Dimmick did not respond in any way to this letter. This notice of the court's order relative to the taking of his deposition was sent to Dimmick despite the fact that the defendant, through Avery Dooley, had sent Dimmick a reservation of rights letter by certified mail, return receipt requested, on January 3, 1968, based on his prior non-cooperation in the defense of the state court tort case. On the basis of a comparison between the signature on the return receipt card attached to a carbon copy of the January 3, 1968 letter (Deft. Ex. X), and three samples of his signature contained in the statement he gave at the Boston Naval Shipyard (Deft. Ex. Q), I find that Dimmick himself signed the return receipt card, and consequently had actual notice of the contents of the January 3 reservation of rights letter.

On February 6, 1968, Avery Dooley forwarded a second reservation of rights letter, by certified mail, to Dimmick at an address in DeKalb, Illinois. Dimmick failed to appear in Boston for the taking of his deposition on February 12, and an order defaulting him because of this failure was entered in the Superior Court on March 15, 1968. On March 26, Avery Dooley sent Dimmick a letter (Deft. Ex. Z), advising him of the fact that he had been defaulted and of the fact that defendant was making a total withdrawal from his case. He was also advised that he had a right to retain his own counsel and should do so immediately. Dimmick took no action on the basis of this March 26 letter, despite the fact that the evidence establishes (Tr. 59–60) that the letter was delivered to him personally by a representative of the insurance company.

After the expiration of approximately six months, a Justice of the Superior Court conducted a hearing on damages and entered a judgment on September 23, 1968, in favor of plaintiff, in the amount of $10,343.10. This hearing was not attended by any counsel on behalf of Dimmick or the insurance company, since Avery Dooley had withdrawn its appearance in the case prior thereto. On October 16, 1968, the Superior Court issued an Execution based on the default judgment in the amount of $12,058.47. Subsequently counsel for plaintiff made demand on defendant for payment thereof which demand was refused, after which this action was commenced.

■■ Since the case is before this court on the basis of diversity jurisdiction, the resolution of the choice of law question presented herein is to be made on the basis of Massachusetts principles of conflict of laws. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Sampson v. Channell, 110 F.2d 754 (1 Cir., 1940). In view of the fact that both insureds, Berquist and Dimmick, were residents of Illinois, that the insurance company is an Illinois corporation with a principal place of business in that state, that the contract of insurance was made and the policy issued in Illinois, it would appear that under Massachusetts choice of law principles the right of the defendant insurance company to disclaim under an Illinois contract of insurance is to be resolved by reference to the law of Illinois. See Searls v. Standard Accident Ins. Co., 316 Mass. 606, 608, 56 N.E.2d 127 (1944), where the Supreme Judicial Court observed:

"The contract of insurance, having been made in the State of Maine, is governed by the law of Maine, and may be enforced here in the present procedure, but the plaintiffs have no greater rights than the insured."

See also, Mertes v. Ballard, 103 Ill.App. 2d 171, 242 N.E.2d 905 (1968). Accord Milliken v. Pratt, 125 Mass. 374 (1878).

The insurance policy as issued contained the following "assistance and cooperation" clause:

"The insured shall cooperate with the company and upon its request attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of any legal proceedings in connection with the subject matter of this insurance."

There appear to be two questions for resolution in this case: (1) did the insured's conduct constitute non-cooperation, and (2) if so, has the insurer waived that defense by failure to assert it properly.

It can be noted at the outset that under Illinois law the insurer need not show that he was in fact prejudiced by the lack of cooperation. If a substantial lack of cooperation is demonstrated, liability may be disclaimed. Gallaway v. Schied, 73 Ill.App.2d 116, 219 N.E.2d 718, 722 (1966); Allstate Ins. Co. v. Keller, 17 Ill.App.2d 44, 149 N.E.2d 482, 485 (1958).

The first question here is whether Dimmick's failure to attend the deposition, failure to attend the trial, failure to respond to the letters from Avery Dooley regarding the notice to admit facts, and his conflicting statements, constituted substantial lack of cooperation. Whether particular conduct of an insured amounts to non-cooperation is a question to be resolved on the facts of each case. Failure of the insured to appear at trial has been held to constitute non-cooperation, Mertes v. Ballard, supra, 242 N.E. 2d at 907, as has his failure to appear for depositions, Gallaway v. Schied, supra, 219 N.E.2d at 721, and as has the making of false statements, Allstate Ins. Co. v. Keller, supra, 149 N.E.2d at 485. Contra, Prudence Mut. Cas. Co. v. Dunn, 30 Ill.App.2d 469, 175 N.E.2d 286 (1961). Consequently, there is no question but that all three of these factors, which

have been proved in this case, taken together constitute a substantial and material lack of cooperation. Thus the insurer does have the right to disclaim on the facts of this case.

The remaining issue is whether the insurer has waived the non-cooperation defense for any reason. Counsel for plaintiff argues that the insurer waived the defense by not using reasonable diligence in trying to locate Dimmick. There is no doubt that an insurer who intends to disclaim for non-cooperation must do so by giving notice to the insured in timely fashion. Gibraltar Ins. Co. v. Varkalis, 115 Ill.App.2d 130, 253 N.E.2d 605, 611 (1969); Apex Mut. Ins. Co. v. Christner, 99 Ill.App.2d 153, 240 N.E.2d 742, 749 (1968); Krutsinger v. Ill. Cas. Co., 10 Ill.2d 518, 526, 141 N.E.2d 16 (1957).

With regard to the issue of reasonable diligence I find that the sending of six letters to Dimmick during the period May 25 through December 4, 1967 (May 25, August 1, September 13, September 22, November 1 and December 4), plus the sending of four additional letters, all by certified mail, between January 3 and March 26, 1968 (January 3, January 16, February 6 and March 26), amounts to due diligence on the part of the insurer in light of the fact that the return receipt for the January 3 letter was signed by Dimmick himself and in light of the fact that the March 26 letter was delivered in hand to Dimmick. In so finding, I have in mind that the efforts of the insurance company in the instant case exceeded those held proper under Illinois law on the part of the insurance company involved in the case of Gallaway v. Schied, supra. Janssen v. Worthington, 99 Ill.App.2d 125, 240 N.E. 2d 709, 712 (1968), is clearly distinguishable on its facts. Consequently, I rule that Dimmick's failure to respond to the notice to admit inquiries from counsel, his failure to attend the deposition, and his giving conflicting statements to the investigators of the insurance company, amounted to a material and substantial

breach on his part of the assistance and cooperation clause in the policy, on the basis of which the insurance company had a right to withdraw, which right was properly exercised.

I rule that the defendant has sustained its affirmative burden of establishing both the defense of non-cooperation and the non-waiver thereof.

Judgment for the defendant.