**NORTHWESTERN NATIONAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Eugene R. CORLEY d/b/a Eugene R. Corley Builders, and Leakakos Construction Co., Inc., Defendants-Appellees.**

No. 73–1376.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1974.

Decided Sept. 13, 1974.

William J. Campbell, District Judge, concurred in part and dissented in part, with opinion.

---

Edward V. Scoby, Chicago, Ill., for plaintiff-appellant.

James A. Regas, Albert J. Horrell, Stephen J. Schostok, Chicago, Ill., for defendants-appellees.

Before PELL, Circuit Judge, and CAMPBELL and GRANT, Senior District Judges.*

PELL, Circuit Judge.

Plaintiff-appellant Northwestern National Insurance Company (Northwestern) brought a declaratory judgment action [1] in federal district court seeking interpretation of its coverage under a comprehensive general liability policy issued to Leakakos Construction Company, Inc. (Leakakos). It named as defendants its insured, Leakakos, and Eugene R. Corley, d/b/a Eugene R. Corley

Builders (Corley), plaintiff in a state court suit against Leakakos for alleged defects in masonry work done under a contract for a Corley-developed apartment building. Northwestern contends that exclusionary language in the insurance policy issued to Leakakos relieves it from the duty to "defend and pay any claim or judgment that might be rendered" against Leakakos and in favor of Corley. Northwestern's complaint for declaratory judgment further alleges that the state court suit, filed October 1970, is still pending in the Circuit Court of Cook County, Illinois. It has not been brought to our attention that there has been any change in this status.

Without reaching the merits of the policy coverage controversy, as to which we also express no opinion, the federal district court granted Leakakos's motion for summary judgment. In its memorandum decision, the court concluded that a 1970 decision of the Supreme Court of Illinois, Gibraltar Ins. Co. v. Varkalis, 46 Ill.2d 481, 263 N.E.2d 823, was dispositive. *Varkalis,* as interpreted by the district court, provides that an insurance company which attempts to reserve its rights under a policy subsequent to appearing and defending the action in behalf of its insured will be deemed to have waived those policy rights.

Northwestern raises two questions for review: (1) whether the district court properly interpreted the applicable state law; and (2) whether certain documents submitted by the parties raise a factual issue as to the existence of a December 16, 1970, reservation-of-rights letter.

## I

The pertinent history underlying this appeal is as follows. In November 1967, Northwestern issued a comprehensive general liability insurance policy (# CLA 61 09 12) to Leakakos covering the

---

* Senior Judge William J. Campbell of the Northern District of Illinois and Senior Judge Robert A. Grant of the Northern District of Indiana are sitting by designation.

1. 28 U.S.C. § 2201. Jurisdiction is based on diversity of citizenship. The parties and the district court accepted the law of Illinois as controlling.

period November 11, 1967, to November 11, 1968. The policy provided in part that the insurer would pay on behalf of Leakakos all sums which it would become legally obligated to pay because of "[p]roperty damage to which this insurance applies, caused by an occurrence . . . ." [2] In summer of 1967, Leakakos entered into a contract with Corley, whereunder Leakakos was to provide masonry work for the construction of an apartment building in Chicago. Leakakos began performance under the contract in September 1967 and completed the work eight or nine months later. In October 1970, Corley brought a $150,000 suit against Leakakos in state court alleging defects in construction and workmanship, which defects supposedly constituted departures from and violations of the terms and specifications of the Leakakos-Corley contract.

In December 1970, Leakakos's personal attorney, James Regas, inquired whether Northwestern would undertake the defense of the Corley suit. On December 16, 1970, according to an allegation in Northwestern's second amended complaint, Northwestern upon receipt of the inquiry mailed to Leakakos a letter in which it, *inter alia*, stated it was accepting untimely notice of the litigation "subject to full reservation of all our rights under the policy." Leakakos denied receiving any such letter. On March 16, 1971, pursuant to stipulation granted by Corley, a law firm retained by Northwestern filed an appearance, answer, and jury demand on the insured's behalf. However, two months prior to that submission, attorney Regas had filed an answer for Leakakos. Thus, there are two answers on behalf of Leakakos on file in the state court suit. On July 6, 1971, Corley's attorneys took the deposition of one of the officers of the Leakakos corporation. Both James Regas and the firm retained by Northwestern attended.

About a week later, July 15, 1971, Northwestern wrote Leakakos that the insurer "shall proceed with the investigation and afford a defense of [the] litigation with the express understanding that in so doing this company does not waive any of its rights under the policy that was issued to you . . . ." The letter also stated that, in the absence of objection within ten days, Northwestern would assume that Leakakos consented to the handling of the defense subject to a reservation of right.[3]

---

2. The clauses upon which Northwestern focuses on this appeal are:

"The company [Northwestern] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

  \*    \*    \*    \*    \*

Coverage B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . ."
Exclusions
This insurance does not apply:

  \*    \*    \*    \*    \*

(j) to property damage to premises alienated by the named insured arising out of such premises or any part thereof;
(k) to . . . property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications . . . prepared or developed by any insured; but this exclusion does not apply to . . . property damage resulting from the active malfunctioning of such products or work;

  \*    \*    \*    \*    \*

(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

3. The letter more fully read:
"Your attorneys . . . have demanded of this Company that a defense be afforded to Leakakos Construction Company, Inc. . . . You are notified that all the information in our possession concerning this policy reveals that this Comprehensive General Liability Insurance policy does not afford coverage for the alleged loss because of the

On July 21, attorney Regas relayed an offer on the part of Corley to settle within the limits of the Northwestern policy ($100,000) and demanded that the insurer do so. The record discloses no response from Northwestern.

On December 16, 1971, Northwestern filed the present declaratory judgment action. Leakakos, joined by Corley, then sought summary judgment. In an amendment to the original motion, Leakakos asserted that the only letter it had received which purported to reserve Northwestern's rights was that dated July 15, 1971, by which time the insurer's attorneys had already begun to participate in the defense of Leakakos in the state court. Leakakos maintained that subsequent to the entry of appearance by the counsel retained by the insurance company Leakakos, as it had a right to do, had relied upon the insurance company to "bear the burden of and do all things necessary for the defense of the State Court proceedings." It argued that the insurer was therefore estopped from relying on the July 15th letter. The district court granted the motion for summary judgment.

## II

The district court, in its memorandum opinion, stated that "the complaint in the state court action should have placed the insurance company on notice that a policy exclusion might be applicable. Since it entered into its defense without reservation, it is estopped from asserting a reservation at a later time."[4] The court found no need to determine whether Northwestern's actions in state court had prejudiced Leakakos; thus, the court apparently interpreted Gibraltar Ins. Co. v. Varkalis, 46 Ill.2d 481, 263 N.E.2d 823 (1970), the case it considered dispositive, as sub silentio overruling what the district court acknowledged to be "a substantial line of Illinois Appellate Court cases . . . suggesting that there is no waiver upon the entrance of the insurance company into the case unless its actions prejudice the insured." (Footnote omitted.) Northwestern strongly disagrees with the court's reading of Varkalis.

In Varkalis, the insured in 1961 had caused the death of a woman by repeatedly driving his car over her body. He subsequently pleaded guilty to a murder charge and entered the penitentiary. In March 1962, Varkalis filed an action against the insured seeking damages for the wrongful death of the woman killed. Gibraltar Insurance Company stated that it first became aware of this claim in February 1964; the next month, counsel for the company entered an appearance and filed an answer on behalf of the insured. In April 1964, its counsel moved to dismiss Varkalis' complaint, which motion was denied. It was not until more than a year later, in July 1965, that Gibraltar notified its insured that it would provide a defense but that it would not extend coverage under the policy because of the manner in which the "accident" had occurred.

exclusionary language in the policy referable to the alleged property damage liability feature of the policy in that the insurance does not apply to 'property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith,' and in addition, the policy provided essentially that the insurance does not apply to 'property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured,' as well as for other exclusions recited in the policy.

"As a matter of courtesy to you and to extend to you every assistance possible this Company shall proceed with the investigation and afford a defense . . . with the express understanding that in so doing this Company does not waive any of its rights under the policy . . . . [T]his Company still has the right to disclaim hereon in the event that there is a verdict and judgment rendered against the said Leakakos Construction Company . . . . ."

4. The district court was referring to Northwestern's letter of July 15, 1971. In Part III of our opinion, we discuss the matter of the disputed December 16, 1970, letter from Northwestern to Leakakos.

In October 1966, Gibraltar filed a declaratory judgment action. The trial and appellate courts held that the action was barred by the statute of limitations. The appellate court further held that Gibraltar, by virtue of its conduct, was estopped from asserting its policy defense. The Supreme Court of Illinois devoted the first part of its opinion to the statute of limitations question in which it disagreed with the lower courts. It then discussed the waiver issue:

"Notwithstanding this continued representation of Robinson [the incarcerated insured] in the wrongful death action . . . , *not until July 13, 1965, did [Gibraltar] advise him* that it was defending the action on his behalf under a reservation of its rights arising under the insurance policy. *Under such circumstances we believe it clear that plaintiff has waived its right* to assert its policy defense. . . . If plaintiff had doubts about its liability under the policy . . . it could have easily given Robinson prompt notice that it would defend the wrongful death action under a reservation of rights, or it could have refused to defend and instituted a declaratory judgment action . . . . "
263 N.E.2d at 827. (Emphasis added.)

In its final remarks on the subject, the court repeated what it obviously thought to be the crucial point:

"[P]laintiff did not notify the insured of its intention to assert a policy defense until July 13, 1965. During the interim it acted on behalf of Robinson as though no questions of policy coverage were involved, *thus clearly causing him to wholly rely for his defense on the efforts of plaintiff.*" *Id.* (Emphasis added.)

██ Although, as the court below noted, the Illinois Supreme Court did not directly discuss prejudice, we think that the quoted passages show that the court implicitly assumed the existence of prejudice. We find support for this interpretation of the court's language in its citation of two appellate decisions that refer to the factor of prejudice, Apex Mut. Ins. Co. v. Christner, 99 Ill. App.2d 153, 240 N.E.2d 742 (1968), and Gallaway v. Schied, 73 Ill.App.2d 116, 219 N.E.2d 718 (1966).[5] *Cf.* Ford Motor Co. v. Commissary, Inc., 286 F.Supp. 229, 234 (N.D.Ill.1968), reviewing Illinois law. In the absence of a clear statement by the Illinois Supreme Court, we are reluctant to conclude that it abolished the requirement of a showing of prejudice to the insured.

██ Under the district court's view of the applicable law, no factual question remained unresolved. However, our interpretation raises the question of whether the insured was prejudiced by Northwestern's conduct.

██ Because of the result we reach in the next portion of this opinion, it is not necessary that we examine in depth the documents submitted in the present case from the point of view of determining whether it could be said that sufficient prejudice was reflected to activate an estoppel. It may well be in further proceedings in the district court that prejudice may be sufficiently shown

---

5. See *Apex*, 99 Ill.App.2d at 161–162, 240 N.E.2d at 747:
"If . . . in spite of its doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy. The estoppel referred to here is 'estoppel in pais'; it is ordinarily justified on the ground that the insurer has prejudiced the insured's right to control his own defense. . . . Estoppel in pais operates as a result of the insurer's monopolization of the insured's de-
fense, since the insured, in reliance thereon, refrains from seeking other counsel." Here Leakakos' counsel did participate in the litigation from the outset.
And see *Gallaway*, 73 Ill.App.2d at 127, 219 N.E.2d at 723:
" . . . Furthermore, the insured suffered no damage by the efforts of Apex in her behalf and the doctrine of waiver, or estoppel in pais can have no application under the circumstances in this case."
*See generally* Case Note, 26 Ill.L.Rev. 90, 92 (1931).

through uncontroverted affidavits, although we are not persuaded on the record before us that such was the case here.[6] We continue to adhere to the view that resort to summary judgment is "a salutary procedural device," Kirk v. Home Indemnity Co., 431 F.2d 554, 560 (7th Cir. 1970), utilization of which in all appropriate cases should be encouraged rather than discouraged by appellate courts.

Since there was a genuine issue of material fact as to whether Leakakos suffered prejudice, summary judgment should not have been granted even if the letter of December 16, 1970, had never been written.

### III

The record presents an alternative and perhaps more significant ground for the reversal of the summary judgment. Northwestern alleged in its second amended complaint, filed June 16, 1972, that it had sent Leakakos a reservation-of-rights letter on December 16, 1970, that is, prior to the participation of Northwestern's counsel in the state court proceedings against the insured. To support this contention, plaintiff appended an affidavit of its claim manager stating that he had dictated the letter, had signed the transcribed original, and had placed it in "the normal and usual channel for the out going mail." The stenographer who typed the letter and the clerk who handles the company's mailing also submitted affidavits.[7] In response, the president of Leakakos filed an affidavit asserting that no letter dated December 16, 1970, had been received from Northwestern.

6. We are not unmindful of the fact that in many instances when an insurance company is defending an action, counsel for the named defendant, while nominally appearing in its behalf, is in fact engaged in nothing more than over-the-shoulder observation. There is a reference to such conduct in a pleading and a brief of Leakakos, but the extent of the personal attorney's participation, and whether Leakakos was in some way prejudiced by a second-line defense, if that was a fact, was not developed in affidavits. In a brief in this court, Leakakos refers to the verified answer to the complaint, as amended, and quotes from it; if "verified" refers to substantiation by oath, the answer in the record is not verified. In any event, the assertions regarding reliance are too general and conclusional in nature to serve affidavit purposes for summary judgment. Leakakos claims, again in briefs or unverified pleadings, that its counsel was representing it because of the claim being in excess of coverage. In the present era of litigation, complaint prayers frequently exceed the coverage, but often this is not accompanied by the insured hiring his own attorney. Leakakos' counsel did apparently control the litigation at one point, because he filed the first appearance and answer. Both counsel participated in later discovery procedures. The unsettled questions of fact pertaining to prejudice become relevant on remand and can only be answered by more detailed affidavits or other evidentiary development. Of course, the likelihood of relevancy will probably hinge on the determination of the December letter issue, which it-

self would not appear resolvable by summary judgment procedures unless someone changes his evidence.

7. Northwestern attached to its second amended complaint a "copy" of the letter it allegedly mailed to Leakakos on December 16, 1970:

December 16, 1970

The Leakakos Construc-
tion Co.
5316 West Harrison Street
Chicago, Illinois
Re: Claim No. 64–13351
      Insured: The Leakakos Construction Co.
      D/A: Spring 1968
Gentlemen:
On December 16, 1970 we received our first notice of a pending lawsuit that allegedly involves improper construction on the part of your company. The plaintiff is Eugene Corley Doing Business as Corley Builders. This situation allegedly took place in March of 1968. Your policy CLA 61 09 12 under which this matter presumably is reported to us requires that written notice of accident be given to this company as soon as possible. Failure to report accidents to us promptly prejudices us seriously in the completion of our investigation and the handling of such claims. Because of the delay in reporting the accident, we accept the notice subject to full reservation of all our rights under the policy.

As a matter of courtesy and to extend to you every assistance possible, we shall proceed with the investigation, adjustment and

Although the district court permitted, over objection, the filing of the second amendment to the complaint which brought the December letter into the pleading orbit, the court's memorandum opinion does not mention this letter, and we have no way of knowing what significance if any was given to it in the decisional process.[8] The opinion refers explicitly only to the July 1971 reservation: "[I]n the instant case, the insurance company's attempt to reserve came six months after it began to act in the case, four months after it filed an answer and 10 days after it represented the insured at his deposition." None of these references could have related to the December letter. We further observe that neither the original complaint nor the first amendment thereto specifically cited either letter. Apparently when a motion for summary judgment was directed to the original complaint, counsel for Northwestern realized the necessity of showing something more than had been shown theretofore and in the second amendment to the complaint alleged for the first time *both* attempts at reservation, i. e., the December and July letters.

Since the district court apparently placed significance on the lateness of the attempt to reserve, we can only conclude that the December letter, if it qualifies as a reservation of rights, would have been sufficiently prompt to have created a genuine issue concerning a material fact. Thus summary judgment was improper. In so concluding, we reject defendants' arguments that the affidavits submitted by Northwestern should be disregarded and that the letter of December was insufficient to reserve rights.

Leakakos' first argument, based on Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is that the rules of the Illinois Supreme Court implementing the Illinois Civil Procedure Act govern which documents a federal district judge may examine in ruling on a motion for summary judgment in an action grounded upon diversity jurisdiction. Defendants' explanation of this supposedly relevant law is somewhat vague. We gather that Leakakos is maintaining that affidavits containing material countering the assertions in an opposing party's motion for summary judgment must be attached to a document specifically denominated as being in opposition to summary judgment. Leakakos states that this same rule applies in federal courts in cases not based on diversity jurisdiction. The affidavits upon which Northwestern relies were merely filed as affidavits without any accompanying documents.

█ If Leakakos is merely arguing that the affidavits are not to be considered because they were not captioned "counter affidavits," we would regard such a contention as frivolous.

██ Although we have doubts that defendants' description of Illinois law is accurate, we find it unnecessary to ascertain Illinois practice on this matter. Rule 56, Fed.R.Civ.P., as interpreted by the federal courts, determines what evi-

---

defense of this claim upon the understanding that in so doing we do not waive our rights under the policy by reason of your failure to give us notice as soon as practicable and subject also to the understanding that you are not to waive any rights which you might have.

Again, we are handling this matter subject to full reservation of all our rights.

Yours very truly,
Phillip A. Mendel
Claim Manager

Although the letter speaks of "accidents," we think that the matter to which it refers was sufficiently clear to alert the insured.

*See* 7A J. Appleman, Insurance Law & Practice § 4694, at 545 (1962) ; *cf.* Canadian Universal Ins. Co. v. Northwest Hospital, Inc., 389 F.2d 559, 561 (7th Cir. 1968). It is also noted that the comprehensive general liability insurance here involved is one part of a group of policies, much of which is vehicular insurance, issued to Leakakos.

8. We also are at a loss to understand why trial counsel for Northwestern did not call the omission to the attention of the district court by an appropriate motion prior to appealing, thereby giving the district court an opportunity to rectify the deficiency.

dence a federal judge may consider on a motion for summary judgment. *See* Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Lloyd v. Lawrence, 472 F.2d 313, 316 (5th Cir. 1973); Somers Constr. Co., Inc. v. Board of Education, 198 F.Supp. 732, 739 (D.N.J.1961); 10 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2712, at 390 (1973); *see generally* Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 718–25 (1974). The federal courts, under Rule 56, "[i]n addition to the pleadings . . . will consider all papers of record, as well as any material prepared for the [summary judgment] motion . . . ." Wright & Miller, *supra* at 476. See, *e. g.*, Repsold v. New York Life Ins. Co., 216 F. 2d 479, 483 (7th Cir. 1954); E. H. Marhoefer, Jr., Co. v. Mount Sinai, Inc., 190 F.Supp. 355, 359 (E.D.Wis.1961).

■ Second, in an alternative argument, Leakakos claims that even if we assume *arguendo* that the purported December 16, 1970 letter was mailed to and received by defendant, it does not aid Northwestern: the letter supposedly failed to use language adequate to reserve Northwestern's rights under the policy. Leakakos relies upon Popovich v. Gonzales, 4 Ill.App.3d 227, 280 N.E.2d 757 (1972), and the cases cited therein.

Several factors distinguish the present case from *Popovich*. First, unlike the letter of the insurance company in *Popovich*, Northwestern's letter, according to the affidavits, expressly provided that "we do not waive our rights under the policy by reason of your failure to give us notice as soon as practicable" and "[a]gain, we are handling this matter subject to full reservation of all our rights." Second, *Popovich* was a garnishment proceeding brought *after* plaintiffs had obtained a money judgment against the insured in a tort action. The *Popovich* court apparently considered such garnishment proceedings to be a special category of insurance coverage disputes, for the court stated that it had found no applicable Illinois authority and, hence, had turned

to the case law of other jurisdictions for guidance. Third, *Popovich* noted that, for reasons of public policy, an insurer's legal duty is rigidly enforced when a contract of automobile liability insurance is involved. The part of the policy relevant to Northwestern's declaratory judgment action concerns the contractual liability, products, and completed operations of the Leakakos Construction Company, not the insured's automobiles.

Nor do the garnishment cases relied upon in *Popovich* undermine the efficacy of Northwestern's alleged December 16, 1970 letter. The notice of reservation of rights sent by the automobile liability insurer in Meirthew v. Last, 376 Mich. 33, 135 N.W.2d 353 (1965), was "vague and uncertain," citing no specific policy defense; further, the insurer's tardiness in sending the notice had prejudiced the rights of its insured and the consequential rights of the successful tort plaintiff. The instrument in Bogle v. Conway, 199 Kan. 707, 433 P.2d 407 (1967), was ambiguous and made no mention of any exclusionary clause in the policy or of any factual basis upon which a denial of coverage might be predicated. Finally, the stringent requirements set out in Henry v. Johnson, 191 Kan. 369, 381 P. 2d 538 (1963), make sense only in the context of a garnishment proceeding; here, Northwestern is attempting to clarify *its obligations* under an insurance policy *before* the underlying suit is finally resolved. *Compare* Galloway v. Schied, *supra*.

The December letter might on a casual reading suggest that the only right being reserved by Northwestern was to deny coverage because of a belated notification of a claim. Our reading of the letter, however, exceeds this narrow interpretation. It appears to us to be a notification that there is a "full reservation of all our rights" and that because of belated notification and a consequent cold investigative potential plus lack of any prior knowledge, the company, while defending under the reservation, does not commit itself to coverage.

The unequivocal nature of the reservation is, in our opinion, of significance in Illinois law. Thus, in *Popovich, supra*, the court stated, "The letter in *Gallaway* expressly and unequivocally stated the insurer's intention to reserve all rights under the policy, whereas what was said by Merit in the case before us· was a warning, not a declaration of intention." 280 N.E.2d at 760.

We do not entertain the opinion that the insured is not entitled to be more specifically informed of the exact reasons for a possible denial of coverage. On the other hand, we do not think that an insured who is given unequivocal notice, such as was given here, can sit quietly by and engage in a sandbagging operation to secure coverage for which he had paid no premium.[9]

We note that in its original motion for summary judgment, which, significantly, was filed prior to the second amendment of the complaint, Leakakos stated the following:

"Under date of January 29, 1971, pursuant to the telephone request of one Mr. Hester, representing plaintiff herein [Northwestern], James A. Regas mailed to plaintiff a copy of the statement of Emmett Corley, who was the job superintendent during the performance of the construction pursuant to which said state court lawsuit was filed, also stating that plaintiff's attorney in said state court suit agreed to allow plaintiff herein to undertake the defense of said suit and to file any other pleadings therein plaintiff may desire *after plaintiff herein had resolved its position as to coverage*." (Emphasis added.)

The parties have not presented any explanation of this portion of the motion, but it seems to us rather clearly to state, within the month following the disputed letter of December 16, 1970, that counsel for Leakakos was aware that Northwestern was in the process of resolving "its position as to coverage."

We recognize that the argument may be advanced, although it has not been thus far, that after Northwestern filed an answer Leakakos assumed that the question had been resolved in favor of coverage. Certainly as the record stands now, there is no basis for handling this possibility by the summary judgment route.

If the letter of December was sent and received, its general reservation of rights was made more specific with relation to the policy by the July letter. The significance of the timing of this letter as following closely upon the deposition of the president of Leakakos which may have demonstrated the exact nature of the claim cannot be determined from the record. It, too, may be one of the factual facets which will be affirmatively developed in further proceedings.

For the reasons set out above, we reverse the judgment of the district court and remand the cause for proceedings consistent with this opinion.

Reversed and remanded.

WILLIAM J. CAMPBELL, District Judge (concurring in part and dissenting in part).

Consistent with the views expressed in Parts I and II of Judge Pell's excellent opinion, I would remand this case to the district court for a determination of whether Leakakos' reliance upon Northwestern's conduct (in assuming Leakakos' defense in the state court action) prejudiced the insured to an extent sufficient to render Northwestern's belated reservation of rights inoperative. With

---

9. Subsequent to the filing of the second amendment to the complaint, the president of Leakakos filed an affidavit to the effect that no letter dated December 16, 1970, addressed to Leakakos at its office in Chicago "was ever received." It, of course, is possible that an individual could be aware that he had not ever received a specific letter. Without setting forth the basis of the positive statement that a corporation, with presumably more than one employee, had never received a specified letter, the president's affidavit smacks more of the conclusional than of the factual.

respect to the views expressed in Part III, however, I must respectfully dissent.

I cannot agree that Northwestern's alleged letter of December 16, 1970 reserved the right to contest coverage on the basis of the specific policy exclusions subsequently identified in Northwestern's letter of July 15, 1971. At best, the December 16 letter reserved to Northwestern the limited right to contest coverage if it could demonstrate that its ability to prepare and conduct an adequate defense had been prejudiced by the alleged delay between the "accident" and notification thereof by the insured.

The December 16 letter, set forth in full at footnote 7 of the majority opinion, was quite specific in this regard. It noted that the policy required written notice "be given this company as soon as possible", and contended that the "[f]ailure to report accidents to us promptly prejudices us seriously in the completion of our investigation and the handling of such claims." Clearly, the possibility of such prejudice constituted the basis for and, in my view, the extent of Northwestern's reservation of rights. Specifically, the letter provides that "[b]ecause of the delay in reporting the accident, we accept the notice subject to full reservation of all our rights under the policy", and that "we shall proceed . . . upon the understanding that in so doing we do not waive our rights under the policy by reason of your failure to give us notice as soon as practicable . . .". (Emphasis added).

This is not a case in which the insured belatedly notified the insurance carrier of some vague and unspecific claim. Were such the case, perhaps the insurance company would be warranted in unqualifiedly reserving all its rights, without identifying the specific grounds upon which coverage may ultimately be contested. But in the instant case, by December of 1970, the state court proceedings had already been commenced. Northwestern could quite easily have reviewed the allegations of the complaint and determined that the subject policy

might not provide coverage with respect to the claim asserted therein against Leakakos. Since the insurance company, on December 16, 1970, knew or had reason to know the nature of the claim asserted in the complaint, its failure to reserve its rights on the basis of specifically identified policy exclusions should foreclose it from later asserting that such rights were reserved by operation of the unspecific reservation of rights language appearing in the alleged letter of December 16, 1970.