Josephine Durbin for use of Sam Ferdman, Appellee,
v. John S. Lord, Attorney in Fact for Underwriters
at Lloyd's, London sued herein as John S. Lord,
Agent in Fact for Underwriters at Lloyd's, Lon-
don, Appellant.

Gen. No. 43,721.

Opinion filed September 9, 1946.   Released for publication
September 24, 1946.

LORD, BISSELL & KADYK, of Chicago, for appellant;
LEONARD F. MARTIN, EDWARD S. CROWELL and JAMES J.
LEWIS, all of Chicago, of counsel.

IRVING G. ZAZOVE and SIDNEY GROSSMAN, both of
Chicago, for appellee.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff procured a judgment for $5,000 and costs May 27, 1943 against Sam Ferdman for injuries sustained by her as a result of a defective metal strip on a stairway in a building at 4058 Ellis avenue, Chicago, leased and operated by Ferdman. October 25, 1945, in a garnishment proceeding, she procured a judgment for $5,627.75 and costs against the garnishee and insurer (hereafter called the insurer) of Ferdman against the liability evidenced by the judgment against him. The insurer appeals, contending that Ferdman breached a condition precedent of the policy. Plaintiff denies that the provision of the policy relied upon by the insurer was a condition precedent, denies any breach of the provision, and in the alternative contends that if there was any breach of any provision of the policy, such breach was waived by the insurer.

The pertinent provision of the policy is: ''This Agreement Is Subject To The Following Conditions. (A) Notice of Accidents. . . . Whenever requested by the Underwriters, the Assured shall aid in effecting settlements, securing information and evidence, the attendance of witnesses, and in prosecuting appeals. The Assured shall at all times render to the Underwriters all co-operation within his power.''

The evidence shows that plaintiff instituted suit on February 25, 1941 against Ferdman, the tenant, and Sharpe, the owner of the premises where plaintiff's injuries were sustained, claiming damages in the sum of $10,000. Ferdman's insurance was $5,000. The summons was delivered to the attorneys for the insurer and answer filed. July 12, 1941, discovery depositions of all the parties to the suit were taken, the attorneys for the insurer being present. Nothing further was done in the case until February 1943, when the case appeared on the trial call, and the attorney for the insurer charged with the defense of the case attempted

to notify Ferdman and his wife of the pendency of the trial. He then learned that they were no longer at 4058 Ellis avenue, the address stated in the policy. The matter was turned over to an adjuster, who investigated and informed the attorney that Ferdman had left the Ellis avenue address some months before and that his whereabouts were not known, except that it was thought he had gone out of the State to be near a son who was in the military service. February 11, 1943 the attorneys for the insurer mailed a letter to Ferdman at the Ellis avenue address advising him that under the terms and conditions of the policy, whenever requested by the Underwriters, he was to aid in securing information and evidence and at all times render to the Underwriters all co-operation within his power, and, in behalf of the Underwriters, demand was made that he co-operate with the attorneys in the trial of the case, communicate with them and arrange to be present at the trial, and that unless he did so it might become necessary for the attorneys to ask leave of court to withdraw from the case and for the Underwriters to decline payment of any judgment that might be entered against him. In this letter Ferdman was requested to communicate with the attorneys at his earliest opportunity and arrange to be at the trial. On the same day a telegram of similar import was sent to Ferdman at the same address. Neither the letter nor the telegram was received by Ferdman. Each was returned to the attorneys, with the information that Ferdman was not at the address given.

February 16, 1943, when the case was reached for trial, the attorneys obtained a continuance until May on account of the absence of Ferdman as a material witness who would testify that the premises were in good condition at the time of plaintiff's injury. May 12, 1943 the action was dismissed as to Sharpe. Between February 16 and May 25, 1943, when the case was actually reached for trial, the attorney for the insurer

made a further effort to locate Ferdman. He telephoned all persons by the name of Ferdman shown in the city telephone directory to ascertain where Sam Ferdman was; each of the persons talked with disclaimed any knowledge as to Ferdman's whereabouts; the owner of the building at 4058 Ellis avenue informed him that Ferdman had been out of the building for some months and that the owner did not know where he was; the attorney made a personal inquiry at the building without obtaining any information. Defendant's motion for a continuance was denied and the case proceeded to trial. The attorney participated in the trial in behalf of Ferdman, in his absence, and without any witnesses to call in his behalf.

On June 3, 1943, after the entry of judgment, the attorneys again wrote Ferdman at the Ellis avenue address, referring to their former letter and telegram, reciting what had been done in court, including the entry of judgment for $5,000 against Ferdman, quoted the provisions of the policy relating to co-operation by the insured and stating that by reason of Ferdman's failure to comply with the provisions of the policy, they, the attorneys, would advise the insurer that it was not liable to pay the judgment; that they had conducted the defense as best they could under the circumstances and that without intending to waive any of the rights of the insurer to deny liability to pay any judgment entered or affirmed against Ferdman, they would appeal; that Ferdman was at liberty to arrange a supersedeas bond if he saw fit, to procure counsel of his own selection to represent him in any further proceeding or in co-operating with the attorneys for the insurer, but that neither the insurer nor the attorneys would be liable for any charges made by any counsel selected by Ferdman. This letter was returned by the postoffice. The appeal was perfected, briefs filed on behalf of Ferdman, and the judgment affirmed by this court February 28, 1944. (321 Ill. App. 642.) Leave

to appeal to the Supreme Court was denied. (326 Ill. App. xiv.)

■■ This is a garnishment action in which the rights of the plaintiff are the rights, if any, of her debtor against his debtor. *Schneider v. Autoist Mut. Ins. Co.,* 346 Ill. 137, 139. The provision of the policy quoted above is a condition precedent the breach of which bars action on the policy. *Schneider v. Autoist Mut. Ins. Co., supra; Muthart for use of Zitnik v. Burik,* 327 Ill. App. 170, 178-180. It is common to policies of this nature, the phraseology varying slightly. It requires the insured, whenever requested, to aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times to render to the Underwriters all cooperation within his power. The insurer's claim of breach of this condition rests solely upon Ferdman's departure from Chicago without notifying the insurer of his intention to depart or of his new address. There is no evidence or suggestion of any collusion between Ferdman and the plaintiff, or any misrepresentation by Ferdman to the insurer, or any failure to comply with any request received by him from the insurer. No improper motive for his departure is shown or suggested. So far as the evidence discloses, he went to California to be near his son who was in the armed service of the country. The evidence shows no activity by the insurer or its attorneys between the taking of the depositions of Ferdman in July 1941, and February 1943, when the case first appeared upon the trial call. There is no evidence of any advice to Ferdman of the need of his appearance at the trial or the necessity of keeping the insurer advised of his whereabouts, or the need of any further co-operation from him.

In support of its contention the insurer cites the case of *Patton v. Washington Ins. Exchange,* 288 Ill. App. 594, where in considering the failure of the insured to respond to a letter from the attorneys for the in-

surer receipted for by the wife of the insured, the court said: "Whether Bair did, or did not, receive this notice, seems to us to be unimportant for it was Bair's duty to keep in touch with his attorneys in regard to his own lawsuit. The evidence clearly shows that he neither appeared to take his deposition, nor on the day the case was set for hearing, nor when it was finally heard." No authorities are cited to support the statement. The decisions of the various states on this question are in conflict. In *Finkle v. Western Automobile Ins. Co.*, 224 Mo. App. 285, 26 S. W. (2d) 843, in which many authorities are cited, the court was considering the effect of the departure of the insured from St. Louis without notice to the insurer and without giving the new address. The provisions of the policy were substantially the same as in the present case, but the facts were much stronger in favor of the insurer in that its attorneys had several times advised the insured of the necessity for holding himself available for the trial. The court said (p. 848): "Under such a situation, it appears that there are two ultimate questions to be determined: First, whether the assured was guilty of bad faith in leaving; and, second, whether the company exercised reasonable diligence in ascertaining his whereabouts, and in procuring his attendance at the trial, or his deposition for use in lieu of a personal appearance." In affirming the judgment for the plaintiff in a garnishment proceeding the court held that the evidence sustained a finding against the garnishee on both of the ultimate questions in the case and justified an inference that failure of the insured to notify the attorney of the insurer of their departure was due to ignorance, inadvertence, or mistake, and not to bad faith and fraudulent motives. In *Pigg v. International Indemnity Co.*, 86 Cal. App. 671, 261 Pac. 486, the court affirmed a judgment in favor of the injured party against the insurer. The provisions of the policy were substantially the same as in the policy before us. The

insured delivered the summons and complaint to the attorneys for the insurer, made a statement of the accident to them and verified the answer filed in the case; on March 24, 1921 the case was set for trial on June 28, 1921 and the attorneys for the insurer made no effort to get in touch with the insured until June 24, 1921; the insured had gone to Japan, and letters and notice to him were not received by him. The court said: ''We may not say that under this evidence the court was not justified in concluding that the assured was not sufficiently advised by those whom the insurance carrier had employed to make his defense; that his going to Japan was in ignorance of any necessity for his remaining here until the trial, or in ignorance of the date set for the trial, or due to failure of counsel to advise him that it was necessary to keep in touch with the attorneys.''

In the present case the insurer was obligated to defend the action brought against the insured by plaintiff. The insured was precluded from interfering with the defense or with any settlement of the claim, except under the direction and at the request of the insurer. He had a right to wait for such direction or instruction. He had complied with all requests of the insurer communicated to him and had appeared and given testimony in the taking of his deposition in the office of the attorneys for the insurer. Unless advised to the contrary it was natural for him to believe that he had given his testimony in the case. For nineteen months no effort to communicate with him was made by the insurer. His reasons for leaving were legitimate and wholly unconnected with any attempt to injure or defraud the insurer. There was no controverted question of fact. The decision depended wholly on the conclusion to be drawn from the facts, and the facts do not show a breach of the condition requiring cooperation by the insured.

The alleged waiver by the insurer of its defense by appearing for the insured in the trial court and on appeal in an attempt to protect the interest of the insured and defeat plaintiff's claim, is extensively argued by both parties, and plaintiff's position was sustained by the trial court. The point, in our opinion, is untenable. As stated above, the insurer was obligated to defend plaintiff's action, unless the insured had breached the conditions of the policy. At the time of the trial the insurer had no definite knowledge as to the reason why the insured failed to appear. There may have been circumstances, such as the death of the insured, excusing his absence from the trial and failure to communicate with the attorneys, in which event the attorneys would have been obligated to defend the action. They were not obliged to withdraw in order to preserve the insurer's defense of breach of condition. The insured suffered no damage by the defense made in his behalf by the insurer, and the doctrine of waiver, or estoppel *in pais*, has no application. *Dwelling House Ins. Co. v. Dowdall*, 159 Ill. 179, 185; *Phenix Ins. Co. v. Grove*, 215 Ill. 299, 302; *Malloy v. City of Chicago*, 369 Ill. 97, 104; *Lake Shore Country Club v. Brand*, 339 Ill. 504, 524.

The judgment is affirmed.

*Affirmed.*

O'CONNOR, P. J., concurs. Mr. Justice MATCHETT concurred in the foregoing opinion but passed away before the opinion was filed.