554

Jeral KIRK, Plaintiff-Garnishor-Appellant,

v.

The **HOME INDEMNITY COMPANY**, a Corporation, Defendant-Garnishee-Appellee,

v.

Jerome **BRZOZOWSKI**, Defendant-Debtor-Appellee.

No. 17995.

United States Court of Appeals, Seventh Circuit.

Aug. 6, 1970.

Rolland Stimson, Narusis & Stimson, Chicago, Ill. for plaintiff-garnishor-appellant; Ellis B. Rosenzweig, Chicago, Ill., of counsel.

Donald M. Haskell, George A. Beck, McKenna, Storer, Rowe, White & Haskell, Chicago, Ill., for defendant-garnishee-appellee.

Before KILEY, CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

On August 16, 1963, at 4 A.M., automobiles driven by the plaintiff Kirk, an Indiana citizen, and Reverend Jerome Brzozowski, an Illinois citizen, collided on the Calumet Expressway in Cook County, Illinois. On November 1, 1963, Kirk filed a personal injury action against Brzozowski in the district court for the Northern District of Illinois. The defendant, Home Indemnity Company, a New York corporation, which was Brzozowski's liability insurer retained a Chicago law firm to defend the suit.

On March 9, 1965, six days before the scheduled trial of the Kirk personal injury suit, Brzozowski appeared at the offices of the Chicago lawyers and gave a statement which contradicted in a substantial manner factual information that he previously had furnished to the company and which he had given in a deposition taken on behalf of Kirk. On March 11, 1965, Home Indemnity by telegram, followed by a letter, advised Brzozowski that it had instructed its attorneys to withdraw from the suit and that coverage was being disclaimed because of the insured's breach of the cooperation clause of the policy.

On March 12, 1965, the attorneys for Home Indemnity filed a motion to withdraw as attorneys for Brzozowski but the motion was denied on the same day because of the trial setting of March 15, 1965.

The Chicago attorneys remained in the lawsuit, their motion for withdrawal having been denied, and on their advice Brzozowski secreted himself and did not

appear at the trial. Verdict was rendered in the trial against Brzozowski in the amount of $25,000, on which judgment was entered.

Home Indemnity paid the Chicago attorneys for their legal fees and disbursements to March 12, 1965. On the record before us no further fees have been paid to the attorneys although billings were sent to both Home Indemnity and Brzozowski.

The suit from which the present appeal was taken was filed in the Circuit Court of Cook County and later removed to the federal district court for the Northern District of Illinois. Kirk sought by garnishment to recover from Home Indemnity the sum of $25,000 plus interest, pursuant to the Illinois statute pertaining to the subject.

Home Indemnity defended on the ground of the breach of the cooperation provisions in its policy covering Brzozowski, the pertinent portion of which reads as follows:

"Assistance and Cooperation of the Insured—Parts I and III: The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
\* \* \* \*"

In addition to its answer setting up the lack of cooperation defense, Home Indemnity filed a motion for a summary judgment based upon the same theory. Pursuant to court order, the entire file of Home Indemnity was produced for Kirk. Various depositions and exhibits were filed in support of the summary judgment motion. Kirk did not file any affidavits or other matters which raised a factual dispute. The motion for summary judgment was granted and this appeal challenges the correctness thereof.

The lack of cooperation under the insurance policy was based on the assertion that Brzozowski had given substantially contradictory statements. The gist of the matter was that his statements had been substantially consistent from a time shortly after the accident on August 16, 1963 until March 9, 1965, six days before the trial, at which time Brzozowski appeared at the offices of the Chicago attorneys retained by Home Indemnity and said that he wanted to make a statement, that the statement he had originally made and had repeated at various times subsequently thereto was inaccurate and untrue and that the testimony he had given under oath on his deposition was also inaccurate and untrue. Conferences followed immediately between the attorneys and Home Indemnity and following these conferences the action of notification of lack of coverage as previously noted herein was given to Brzozowski.

Brzozowski's statements, which were inconsistent with the statement given to the attorneys on March 9, 1965, assumed five forms which were as follows:

1. Brzozowski prepared, signed and submitted an accident report dated September 6, 1963 to Home Indemnity (September Report).

2. Later in September 1963, Brzozowski wrote two letters to Kirk's insurance company making a claim for his own losses (September Letters).

3. On October 3, 1963, Brzozowski gave a signed statement to a representative of Home Indemnity (October Statement).

4. On December 17, 1963, Brzozowski's deposition was taken by attorneys for Kirk (Deposition).

5. In January 1964, the deposition of a police officer was taken on behalf of Kirk and transcripts of this deposition and Kirk's deposition were sent by the attorneys appearing for Brzozowski to him. He read them and prepared three typewritten sheets in response (January response).

The areas of contradiction were also five in number and involved the following categories:

1. Consumption of alcoholic beverages.

2. Brzozowski's condition at the time of the accident.

3. His activities prior to the accident.

4. Speed.

5. Other facts of the accident itself.

With regard to consumption of alcoholic beverages, Brzozowski made the statements hereinafter set out.

October Statement: "I had not been drinking any alcoholic beverages prior to this accident."

Deposition:

Q. "Had you consumed any alcohol during the twelve hours immediately preceding the accident?"

A. "No, I hadn't, outside of the alter Mass wine. That was in the morning of the 15th."

January Response: "He says * * * he 'could smell a faint odor of alcohol' * * * if he smelled anything, it was 'F and F Cough Lozenges', because that's what I had in my mouth at the time. I had a slight throat cold that day. He did not smell alcohol."

"As to his saying that I had a few drinks, he's fabricating. I denied having had any drink * * * he sort of jokingly asked if I wanted to take a drunkenmeter test and I said: What for? You know I'm not drunk, so cut it out! so he dropped the subject." "He says my eyes were 'blood shot'. They may have been tired and perhaps a bit red, because I had my windows opened * * * so that the wind blew directly in my face. But they were not blood shot from any drinking * * * and that's what he's trying to imply."

March 1965 Statement: "I had Scotch * * * Scotch and water * * * without ice * * * my best knowledge—oh, I imagine around 9, 10, maybe more. I don't know, in there somewhere * * * [Started drinking] around 4 o'clock * * * [stopped drinking] about 10 o'clock [shortly before he went to sleep]."

With regard to his physical and mental condition at the time of the accident, Brzozowski stated in his deposition that he was keeping a sharp lookout just prior to the accident and that he was alert. In his January response Brzozowski stated that he did not seem dazed and that when a deponent had said his speech was slurring he was not correct because he carried on a normal conversation and there was no slurring of his speech. He further stated that there was nothing unusual in the manner in which he moved.

In his March 1965 statement, however, Brzozowski admitted that before 10 o'clock when he went to sleep he felt lightheaded and that in his opinion the Scotch was affecting him. When he woke up about 2 o'clock he noticed that from the Scotch he was drowsy and while he did not think it affected his eyes, it might have. Following the accident he had fuzziness which might very well have been from the previous drinking.

With regard to his activities prior to the accident, Brzozowski in his October statement indicated that he had been in Terre Haute, Indiana and was bound home at the time of the accident. [The

court takes notice of the fact that Terre Haute, Indiana is approximately 186 miles from Chicago.] In his deposition Brzozowski testified that he was returning home from a pleasure trip of eight or nine hours duration to Terre Haute and had just driven down there and back for recreation and did not stop to visit any friend. In his March, 1965, statement, Brzozowski indicated that prior to the accident he had been in his summer home at Lowell, Indiana alone with a female friend having left Chicago shortly after lunch. [The court takes notice that Lowell, Indiana is approximately 48 miles from Chicago.]

With regard to the speed at which he was driving at the time of the accident, Brzozowski said in his October statement that he was going forty to forty-five miles per hour. In his deposition, this is increased to forty-five to fifty miles per hour. In his March 1965 statement he said he was going fifty-five miles per hour.

With regard to other facts of the accident, in the September report Brzozowski indicated he saw no lights on Kirk's car, that Kirk was driving recklessly, turning improperly, parking improperly and that Kirk may have been drinking, asleep or fatigued. Brzozowski indicated the, Brzozowski, was driving in the middle of three lanes, not speeding, and that Kirk had previously struck a median post and was backing into Brzozowski's lane of travel perpendicular to the highway. He did not hit Kirk from behind. He further asserted he stepped on his brakes. In his September letter, Brzozowski claimed that Kirk's car was perpendicular to the highway at the time of the accident without lights. He contended either Kirk had attempted to cross the median which separates the northbound traffic from the southbound traffic or that he lost control and struck a post just before the accident. In either case it was Kirk's negligence, he contended. Brzozowski further stated he did not know whether Kirk was over-fatigued, fell asleep or was under the influence but that he seemed to be back-

ing or bouncing in Brzozowski's lane. Brzozowski said that he swerved to the right, stepped on his brakes and glanced off the left rear side of Kirk. Kirk, he indicated, was more than perpendicular to the highway already. The question was, according to Brzozowski, whether he struck Kirk or whether Kirk backed and bounced into Brzozowski's lane after having struck the median pole. In his October statement, Brzozowski indicated that when he saw Kirk's car facing west across the highway with part of the rear blocking the center lane, he saw no lights on the car, that Kirk's car was at a complete stop by the time of the accident and despite Brzozowski's swerving he was unable to avoid the collision.

In his deposition, Brzozowski testified that he had told the police officer that the rear of Kirk's car had swerved into his lane, that he first saw Kirk's car about fifty or sixty feet ahead of him, and that Kirk's car was almost perpendicular to the highway. In his January response, Brzozowski again stated that Kirk's car was perpendicular to the highway with its right rear end in Brzozowski's lane but Brzozowski saw no lights on the Kirk car, that Brzozowski slammed on his brakes, that Kirk was at fault and Brzozowski did not strike the Kirk automobile in the rear. In his March 1965 statement, Brzozowski said that when he saw Kirk's car it was very close, about fifteen feet ahead of him, that he was not sure whether he applied his brakes, that he did not know one way or the other whether Kirk's car had any lights on or whether it was moving or stopped or whether the other car was perpendicular to him.

The only other factual matter we deem of consequence on this appeal is that at some substantial time prior to the March 9, 1965 statement, Home Indemnity was aware of the existence of post-accident witnesses who would testify to facts indicative of some alcoholic beverage consumption on the part of Brzozowski. The facts in this respect were the smelling of alcohol on Brzozowski's breath, which the police officer

characterized as "a faint odor," some lack of steadiness in gait and slurring of speech. The deposition of the representative of the company assigned to the claim indicated that an investigation had been conducted with reference to the possibility of drinking and that the investigation had not revealed that Brzozowski had been in fact drinking prior to the accident.

■■ At the outset of our consideration two legal principles seem clear. As a procedural matter, the granting of summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances. It is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial. Shultz v. Manufacturers & Traders Trust Co., 1 F.R.D. 451, 452 (W.D.N.Y.1940). If the pleadings, and proof in the form of depositions, affidavits and admissions on file, disclose that no real cause of action or defense exists, the court may determine there is no issue to be tried and may grant a summary judgment. The court has the power to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried. Parmelee Transportation Co. v. Keeshin, 292 F.2d 794, 797 (7th Cir. 1961).

■ As a substantive matter, and this being a diversity action the law of Illinois is controlling, if Brzozowski could not recover against his own insurance company for its failure to continue to afford coverage then Kirk has no cause of action against the insurance company. Schneider v. Autoist Mutual Ins. Co., 346 Ill. 137, 178 N.E. 466 (1931). DeRosa v. Aetna Ins. Co., 346 F.2d 245 (7th Cir. 1965).

■ Returning to the procedural aspect of the case, this court has held that summary judgment was a proper remedy in cases involving a claim of lack of cooperation under an insurance policy and where the trial court correctly determined that no genuine issue as to any material fact remained in the case for

decision, summary judgment should be entered. See, for example, Potomac Insurance Co. v. Stanley, 281 F.2d 775 (7th Cir. 1960).

Contrary to Kirk's contention, the decision of this court in Pawlik v. State Farm Mutual Automobile Ins. Co., 302 F.2d 255, 257 (7th Cir. 1962) is not authority for the proposition that what constitutes cooperation by the insured is a question of fact to be determined upon a full hearing. Judge Kiley's exact statement was:

"What constitutes cooperation is *usually* a question of fact."

The contention of Kirk would mean that in no case could the question of cooperation be the subject of summary judgment motion procedure. This is contrary to other holdings of this court and we do not now propose to place this particular question beyond the realm of summary motion procedure.

While differing somewhat in the mechanics of application, functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict as stated in 6 Moore's Federal Practice 2d Ed. ¶ 56.02[10], at 2043 (1966):

"The crux of both theories is that there is no genuine issue of material fact to be determined by the trier of the facts, and that on the law applicable to the established facts the movant is entitled to judgment. As Justice Jackson stated in Sartor v. Arkansas Natural Gas Co. [321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967], 'a summary disposition * * * should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.'"

The Moore text also points out that the primary purpose of the motion for summary judgment is to avoid a useless trial (*ibid* p. 2042) and that the summary judgment procedure is a procedural device for promptly disposing of actions in which there is no genuine issue of

any material fact even though such issue might have been raised by the formal pleadings. Further, the text states that the purpose of Rule 56 is to eliminate a trial in such cases since a trial is unnecessary and results in delay and expense (*ibid* ¶ 56.04 [1], at 2057).

■ With the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure wherever appropriate. Therefore, while appellate courts should not look the other way to ignore the existence of genuine issues of material fact, on the other hand we do not deem it necessary in the best interest of judicial administration to strain to find the existence of such genuine issues where none exist. To do so would perforce have a dampening effect on the proper use of a salutary procedural device as frequent and consistent overturning of the granting of summary judgments would tend to indicate to a trial judge that he should just proceed with the trial rather than granting a summary judgment, having it appealed and then upon reversal having to try the case.

■ Home Indemnity points out that after it filed its motion for a summary judgment with supporting documents, Kirk did not thereafter file any affidavits or other matter raising any factual dispute. It is true that under Rule 56(e), Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, an adverse party may not rest upon the mere allegations of his pleading but his response by affidavits or otherwise must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, should be entered against him. See, in this connection, McPherson v. St. Paul Fire & Marine Ins. Co., 350 F.2d 563, 566 (5th Cir. 1965).

However, it is unnecessary for us to dispose of the matter on the basis of non-compliance with Rule 56(e) as the documents filed by Home Indemnity appeared to include those which ordinarily Kirk would have filed and as far as we can see all appropriate documents available to either party were put before the court by Home Indemnity. We therefore are considering the matter on the merits to determine whether the granting of the summary judgment was appropriate.

Kirk contends, citing Metropolitan Casualty Ins. Co. of New York v. Richardson, 81 F.Supp. 310, 314 (S.D.Ill. 1948), that whether a misstatement to an insurance company by the insured was erroneous (i. e., inadvertent) or intentional is an issue of fact to be determined by the court or jury. With this general statement of the law we can not quarrel; however, *Metropolitan* does not preclude summary judgment when there is no genuine issue of fact.

We find no contention in the case before us, and indeed from the record believe none could be made, to the effect that Brzozowski did other than make false statements to his insurance company and that these were made knowingly and intentionally.

It is significant to note that the judge in the *Metropolitan* case, *supra*, emphasized that the insurance company is not entitled to anything from the insured except the truth but the company is entitled to no less than the truth on all occasions.

The judge in applying Illinois law stated (at p. 315):

"It is the duty of the insured to give a full, frank and complete statement of the cause, conditions and circumstances of the accident and the conduct of the parties at the time in order that the insurer may properly present its defense."

He then quoted, as have other courts, with approval the language of Judge Cardozo in Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443 (1928):

"Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-

operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense."

The parties before us disagreed as to the applicable Illinois law with regard to whether the insurance company need to have been prejudiced by lack of cooperation under the policy. Kirk relies upon early Illinois Supreme Court decisions to establish his contention that the insurance company must prove prejudice to void performance under its contract, Simmon v. Iowa Mutual Casualty Co., 3 Ill.2d 318, 121 N.E.2d 509 (1954), and Schneider v. Autoist Mutual Insurance Co., 346 Ill. 137, 178 N.E. 466 (1931). Kirk also relies on more recent appellate decisions from Illinois, Mertes v. Central Security Mutual Insurance, 103 Ill.App.2d 171, 242 N.E.2d 905 (1968), and Panczko for Use of Enright v. Eagle Indemnity Co. of New York, 346 Ill.App. 144, 104 N.E.2d 645 (1952).

Home Indemnity, on the other hand, points to several appellate decisions from Illinois state courts indicating that strict compliance with cooperation requirements is demanded and that no showing of prejudice should be needed, Allstate Insurance Co. v. Keller, 17 Ill. App.2d 44, 149 N.E.2d 482 (1958) and Gallaway v. Schied, 73 Ill.App.2d 116, 219 N.E.2d 718 (1966). While we do not find the cases cited by Kirk necessarily supportive of his position on Illinois law, we do not, however, need to reach a final determination on this point as it seems clear to us as a matter of law that when Home Indemnity learned six days before the trial that the facts were substantially different than their insured had led them to believe the facts were, there was substantial prejudice to the Company.

This was not a case of inconsequential or technical variance. The insured upon inquiry following earlier depositions had stated positively that he had not had any drinks other than sacramental wine earlier on the day before the accident and in a number of other important and sig-

nificant respects his earlier statements were at complete odds with the information he furnished his company just six days before the trial. Of particular significance and of particular prejudicial consequence to Home Indemnity was the fact that the earlier misstatements were not merely reposing in the files of the company but had been perpetuated in a deposition which could not but have had devastating effect in the trial of the cause if Brzozowski had testified.

Kirk contends that what Brzozowski had to drink the preceding day is totally irrelevant since he had had four uninterrupted hours of sleep and had been awake for one and one-half hours before the accident. We cannot conceive that any trier of fact would blandly feel that Brzozowski had not been impeached had they heard his deposition denying that he had consumed any alcohol in the twelve hours immediately preceding the accident and then have heard him testify, as he would have had to have done, and as he told his company less than a week before the trial, that he had had nine or ten "maybe more" scotch highballs without ice. Also we cannot conceive that the trier of facts would not have been prejudiced by the discrepancy between his deposition statement that he had merely driven to Terre Haute and back and had seen no one and his statement immediately prior to the trial that he had gone to Lowell, Indiana with a female friend and had been with her during the course of the evening. Other discrepancies which might have had less, but nevertheless significant, prejudicial effect are contained in the summary of the facts set forth at the beginning of this opinion.

The prejudice existed in either course open to Home Indemnity once the facts had been made known to it. On the one hand, if Brzozowski were kept away from the personal injury trial (which was in fact done) one cannot deny that the failure of a party to appear in a trial and to be seen by the trier of facts is prejudicial to the best interests of his case. Any contrary thinking is incon-

sistent with that of virtually all of the trial bar and indeed this requirement of attendance at the trial seems to be a standard condition of insurance policies as a part of cooperation. We are not unmindful that the failure of a criminal defendant to testify on his own behalf is not under the Fifth Amendment, at least as a matter of law, to be construed as any admission of guilt on his part. There would have been no such protection afforded Brzozowski in the case before us. On the other hand, if Brzozowski had appeared at the trial and had testified, the various discrepancies between his deposition statements and that to which he would have testified would not only have been prejudicial in the minds of the trier of fact insofar as determining what the facts were because of the impeachment of his integrity but certain aspects of his pre-accident conduct could very reasonably have resulted in a punitive verdict well above and beyond the compensatory damages that otherwise would have been involved.

■ Kirk's contentions that there was a genuine issue of fact to be determined on trial seemed not to be founded so much upon the facts before the district court as upon some sort of feeling that the insurance company knew more about their insured and the probability of his having made inconsistent statements than the insurance company was admitting. This we do not deem to be a basis for denial of summary judgment. Surmise or suspicion does not rise to the dignity of a genuine issue as to material fact. 6 Moore's Federal Practice 2d Ed. ¶ 56.17 [31], at 2562 (1966).

■ In support of both his position that breach of the cooperation clause raises a question of fact and that prejudice therefrom must be shown, Kirk has relied rather extensively on the case of Standard Accident Ins. Co. of Detroit, Mich. v. Winget, 197 F.2d 97 (9th Cir. 1952). While *Standard Accident* involved an application of California law, the principles enunicated there are applicable here, but rather than sustaining Kirk's contentions it appears to us from an analysis of the case that it is supportive of the Home Indemnity position.

The Ninth Circuit in rendering its decision pointed out that there seemed to be conflict in the California cases as to whether prejudice from the non-cooperation was necessary. In the case before us, Kirk contends that the Illinois Appellate Court cases do not necessarily represent the Illinois law as holding there is no necessity of a showing of prejudice. The court in *Standard Accident,* however, referring to the conflicting decisions of the California courts had this pertinent observation (at p. 101):

> "But it is to be noted that in every one of the cases cited, including the decision of this court, in which non-cooperation because of falsification was found, the court was convinced that the concealment, because of its nature or the long duration of time for which it was maintained, was of such character that the court, as a matter of law, could infer harm to the insured."

The court then reviewed a number of the cases apparently relied upon by the insurance company in *Standard Accident* and we find phrases which are highly significant in the appeal before us such as, " * * * there was long delay, thus depriving the insurer of the opportunity of making prompt investigation," " * * * gave at the trial a completely changed version of the facts," " * * * the defendant had given several different versions of the accident" and "(w)hat constitutes cooperation, or lack of it, on the part of the assured within the meaning of such clauses, is a question of fact, *except where there is no dispute in the evidence."*

In *Standard Accident* the insured had denied in a deposition that he had been drinking. Incidentally, as contrasted with the case before us, the subsequent change on the fact of drinking or nondrinking was the only matter involved in the claim of lack of cooperation. In *Standard Accident* before the deposition was released a correction was made and

the true version given. As the court states, the statement was withdrawn before it had become *frozen* in the record of the deposition (*ibid* at p. 102). There the insured, who appears to have been a young man, talked to his personal counsel employed by his father to assist in the trial of the case and told him after the taking of the deposition that he was not sure in his own mind whether beer was in the category of intoxicating liquor. The attorney advised him that it was important to correct the deposition and it was promptly corrected. It does not appear that the insurance company had previously been furnished any contrary statement. Further, it did not appear that the deposition was used at the trial for any purpose and the question of intoxication did not enter into the determination of the cases in the state court.

In the case before us, while we may indulge in the assumption that Brzozowski went to the attorneys on March 9, 1965 as a matter of his conscience bothering him, the record is silent as to why he had told the substantially different versions involving both the accident and the facts surrounding the accident on various occasions prior to March 9, 1965. Brzozowski's deposition was also taken in the present case when it was pending in the district court on January 24, 1969 and counsel for Kirk had ample opportunity to attempt to develop any extenuating circumstances of the type involved in *Standard Accident*.

It also must be noted that Kirk quotes in his original brief two extracts from *Standard Accident* but omits from the middle of the quoted portions of the opinion what we deem rather significant language as follows (at p. 102):

"In all the cases just referred to, there was a showing that the insurance company acted upon the misrepresentation or concealment and took a position from which they could not deviate without harm. In the present case, nothing of this character happened."

Cases from other jurisdictions were also considered in *Standard Accident* in which the premise was developed that in all cases examined which have denied recovery as a matter of law because of lack of cooperation, "the false statements were repeated and persisted in for long periods and in most instances to or through the trial of the damage suits." (*ibid* p. 102). These cases were contrasted with those where the determination of material and substantial non-cooperation by the insured was a question of fact and where the materiality of the breach had to be determined before the law was applied. Again, the cases cited in *Standard Accident* emphasized quick correction of misstatements. In the case before us in which the false statements were repeated and persisted in for a long period and almost to the trial of the damage suit, we hold that as a matter of law the false statements constituted non-cooperation within the meaning of the policy.

In Rowoldt, for Use of Flanagan v. Cook County Farmers Mutual Ins. Co., 305 Ill.App. 93, 26 N.E.2d 903 (1940), also relied upon by Kirk, there was a situation where although Rowoldt originally denied participation in the accident, less than two weeks thereafter he made a full, detailed statement under oath in which he admitted his part in the accident. In *Rowoldt* the defendant company did not do anything to deny its liability under the policy but permitted its attorney to enter its appearance in the plaintiff's suit. *Rowoldt* is not controlling authority here except insofar as it implies that a different result might have been reached where there was long and substantial delay before the recantation.

Kirk strenuously contends that even if Brzozowski was guilty of a breach of cooperation clause of his insurance policy, Home Indemnity waived its right to assert lack of cooperation. This is based upon two facets of the factual situation presented to the district judge. The first of these was that there was some indication from the post-acci-

dent witnesses that Brzozowski had been in fact drinking. The second point urged in this respect by Kirk was that the continuance of the attorneys in the trial and their expectation of securing compensation for their services from Home Indemnity in some way constituted a waiver on the part of the insurance company.

In regard to the first point, there is no disputed issue of fact that there was some indication in the file of Home Indemnity well in advance of the March 9, 1965 statement to the effect that Brzozowski might have been drinking. There was no dispute either that the insurance company with awareness of this indication had made an investigation. The district judge, however, did not need to rely upon the credibility of the insurance company's representative because other undisputed factual aspects of the situation made the conduct of the insurance company reasonable under all the circumstances. This is not a case where an isolated statement was given to the insurance company shortly after the accident and then at some subsequent date, well before the trial, the insured recanted on his earlier story. See State Farm Mutual Automobile Ins. Co. v. Walker, 382 F.2d 548 (7th Cir. 1967).

In the State Farm case, supra, incidentally, this court stated (at p. 551) that it stands ready in the type of situation involved in the case now before us to approve summary judgments where there are no genuine issues as to material facts.

In the case at bar the insured consistently and on five different occasions, over a four or five month period adhered to statements pertaining to the accident and its factual background from which position he did not retreat for another fourteen months after the last statement. On one of these occasions he was under oath in his deposition. At the time of the accident and for over twenty-five years prior thereto Jerome Brzozowski was a Catholic priest and the insurance company undoubtedly gave consideration to his occupation in giving credence to his repeatedly consistent statements.

Further, it is to be noted that Brzozowski in denying that he had been drinking attributed the cause to a cough lozenge, which he had in his mouth following the accident. A condition of shock following the trauma of an accident which would affect both speech and gait is not at all uncommon.

Further, and significant on the matter is the fact that Kirk's assertion is confined to the matter of drinking. However, as we have set forth hereinbefore, Brzozowski's statements prior to March 9, 1965, differed from his March 9 statement in a number of other substantial respects any one of which would have constituted a substantial breach of the cooperation clause.

There is nothing in the record, which was before the district judge or which is before us, which would have put Home Indemnity on any notice that their insured in a number of ways and on a number of occasions deviated from the truth. Kirk has not contended on this appeal that the indications available to the insurance company of possible drinking were of such magnitude as to alert them to the possibility of a panorama of falsehoods. In the absence of clearer and more persuasive reasons for Home Indemnity to have been put upon notice of lack of veracity, we do not find any basis for waiver insofar as the information available to the insurance company, or that which within reason should have been available to it, was concerned.

With regard to the second point of asserted waiver, the record does not show any more than the hope on the part of the attorneys retained by Home Indemnity that they would be compensated for their services in going through the trial. The attorneys attempted to withdraw from the case but the court did not permit them to do so and they had no choice but to continue through the trial. The fact that they had Brzozowski secrete himself and not appear at the trial is in no way attributable to Home Indemnity. That company had

made it clear that it was withdrawing coverage as soon as it discovered the substantial variance in the facts as earlier related by Brzozowski and as stated to the attorneys on the eve of the trial. We do not deem that the actions of the attorneys or their hope for compensation under the particular circumstances of this case in any way constituted a waiver on the part of Home Indemnity.

There is Illinois authority for the proposition that the mere continuance of affording a defense to an insured who has failed to cooperate, at least under certain circumstances, is not a *per se* waiver of the right to an ultimate denial of coverage. Durbin v. Lord, 329 Ill. App. 333, 68 N.E.2d 537 (1946). DeRosa v. Aetna Ins. Co., 346 F.2d 245 (7th Cir. 1965). See also the annotation indicating that where there was a prompt disclaimer of liability by the insurer, or where it continued in a trial with a reservation of its rights under the policy, the holding has been that there was no waiver of the breach. 60 A.L.R.2d 1157 (1958)

If Home Indemnity had continued affording a defense to Brzozowski after its notification of March 11, 1965, it might be necessary for us to determine whether this created an issue of material fact or whether this was merely a fact requiring legal analysis. We do not deem it necessary to make this decision, however, because of our view that there was not a factual basis for any reasonable inference that Home Indemnity did continue affording a defense after its notification of disclaimer.

We do not share with Kirk the fear that our holding in this case will cause the expressed public policy of requiring insurance coverage to protect innocently injured persons to become hollow. We can not conceive that there will be any alarming number of insureds making misstatements to the insurance companies for the purpose of allowing the companies to avoid liability payments as the result would be that the insureds themselves without the very coverage which they had purchased by their premiums would be subject to individual and personal liability on the judgments obtained.

The cases of collusion in the insurance field seem, for the most part, not to involve a compact between the insured and his insurer but rather between the insured and the injured third party.

For the reasons hereinbefore set out, we are of the opinion that the motion for a summary judgment was properly granted and therefore the judgment of the district court is

Affirmed.