**Leonard S. KALISKI, et al., Plaintiffs,**

v.

**HUNT INTERNATIONAL RESOURCES CORPORATION, et al., Defendants.**

**No. 80 C 2329.**

United States District Court, N.D. Illinois, E.D.

May 6, 1985.

Russel Woody, Mardell Nereim, Cotton, Watt, Jones & King, Stephen J. Spitz, Sperling, Slater & Spitz, Chicago, Ill., for plaintiffs.

Phillip N. Smith, Jr., Eric R. Cromartie, John J. Little, Hughes & Hill, Dallas, Tex., Philip W. Tone, Wm. D. Heinz, Robt. T. Markowski, Jenner & Block, Chicago, Ill., Cary B. Lerman, Los Angeles, Cal., James R. Stinson, Sidley & Austin, Morton Denlow, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This action is before the court on motion of three defendants, N.B. Hunt, W.H. Hunt

and Hunt International Resources Corp. ("HIRCO"), for partial summary judgment. For the reasons set forth below, defendants' motion is granted.

## FACTS

Plaintiffs have sued numerous defendants under section 10(b) of the Securities Exchange Act of 1934 ("1934 Act), 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240; Section 17 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q, Section 12 of the 1933 Act, 15 U.S.C. § 77i; and sections 1406, 1408 and 1410 of the Interstate Land Sales Full Disclosure Act ("ILSFDA") 15 U.S.C. §§ 1705, 1707 and 1709. Plaintiffs allege that defendants operated a real estate fraud scheme by making misrepresentations and omissions to deceive plaintiffs into purchasing and making a series of payments on land located in Colorado City, Colorado.

In the mid-1960's, Colorado City was developed by the Colorado City Development Company ("CCDC"). In 1969, CCDC was purchased by Great Western United Corp. ("GWU"). Five years later, in November, 1974, defendants N.B. Hunt and W.H. Hunt each purchased approximately 30% shares of GWU and became members of the Board of Directors of GWU. In February, 1978, HIRCO acquired all of the stock of GWU.

The five plaintiffs in this case are all purchasers of property at Colorado City. It is undisputed that each of the land sales to these plaintiffs took place before February 1, 1969, over 6 years before the Hunts acquired their GWU stock. The two lots purchased by the Kaliskis and the three lots purchased by the plaintiff Carole Kovich were fully paid and deeded prior to 1974. The two lots of the two remaining plaintiffs, the Housers, were fully paid and deeded as of October, 1976 and March, 1978.

In their motion for partial summary judgment, the Hunt defendants and HIRCO ask for judgment on all claims relating to contracts entered or payments made prior to November, 1977 for the Hunt defendants, and prior to February, 1978 for HIRCO. Defendants essentially assert that they cannot be held liable for acts committed before they had any interest in or control over the Great Western Companies.

## SUMMARY JUDGMENT

On a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Cedillo v. International Association of Bridge and Structural Iron Workers*, 603 F.2d 7, 10 (7th Cir.1979). The nonmoving party is entitled to all reasonable inferences that can be made in its favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, a plaintiff may not merely rely on conclusory pleadings to withstand summary judgment. In responding to a motion for summary judgment, a plaintiff must set forth specific facts in affidavits or otherwise showing that there are genuine issues that must be decided at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

■ The purpose of the summary judgment procedure is to eliminate a trial in cases where a trial is unnecessary and results in delay and expense. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). As the Seventh Circuit Court of Appeals has noted, with the ever-increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedures whenever possible. *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559–60 (7th Cir.1970). Courts therefore will not strain to find the existence of a genuine issue where none exists. *Id.*

### Securities Law CLaims

■ First, with respect to the claims under the securities acts, defendants argue that they cannot be held liable for violation of the securities laws because the land

sales to all the plaintiffs were made long before 1974. It is uncontroverted that the Hunts and HIRCO had no involvement in any activities relating to Colorado City until November 1, 1974 at the earliest. They therefore assert that they can have no liability for any payments made before that time.[1]

As defendants point out, it is well established that a person may not be held liable as a control person for acts occurring before that person took control. *See, e.g., Sennott v. Rodman & Renshaw*, 474 F.2d 32 (7th Cir.1973), *cert. denied*, 414 U.S. 926, 94 S.Ct. 224, 38 L.Ed.2d 160 (1973). Plaintiffs do not contest this point. Instead, they assert that these defendants are liable for acts performed before they acquired their interest in GWC as aiders and abettors and co-conspirators.

First, plaintiffs assert that the Hunt defendants are liable as aiders and abettors for all acts of the alleged scheme to defraud. They argue that, since under federal criminal law, aiders and abettors are punished as principals, by analogy, one who aids and abets a civil securities violation is also liable for all the acts of other participants in the scheme, even if those acts occurred before the defendant entered the scheme. Plaintiffs cite no authority for this proposition, and no authority has been uncovered by the court. To the contrary, courts have held that a person may not be held liable as an aider and abettor when the acts constituting the alleged aiding and abetting occur after the fraudulent transaction is completed.

For example, in *Mendelsohn v. Capital Underwriters, Inc.*, 490 F.Supp. 1069 (N.D. Cal.), the court found that no aiding and abetting violation occurred when the alleged aiding and abetting occurred after the alleged fraudulent transaction was complete. The court observed that to hold a person liable for aiding and abetting, the plaintiff must plead and prove: (1) the primary party's violation of the securities law; (2) the alleged aider and abettor's knowledge of the primary violation; and (3) the performance of acts that substantially assist the violation. 490 F.Supp. at 1079. To satisfy the "substantial assistance" element, the court held that a plaintiff must establish a "substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm suffered by the plaintiffs." *Id.* at 1084. The court concluded that this causal connection cannot exist when the alleged aiding and abetting occurs after the completion of the fraudulent transaction. *Id.* at 1088.

In *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 49 (2nd Cir.1978), the court implicitly adopted the same rule by limiting damages in a securities fraud case against an aider and abettor to those incurred while the defendant was actually aiding and abetting the violations. *See also Rolf v. Blyth Eastman Dillon & Co., Inc.*, 637 F.2d 77 (2nd Cir.1980) (appeal after remand). Similarly, in *Brennan v. Midwestern United Life Insurance Co.*, 286 F.Supp. 702 (N.D.Ind.1968) (Esbach, J.), *affirmed*, 417 F.2d 147 (7th Cir.1969), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), the court limited aider and abettor liability to the time during which the defendants took an active part in the fraud. 286 F.Supp. at 728. The court relied on common law tort principles to limit aider and abettor liability, allowing recovery only when the defendant's conduct was a substantial factor in bringing about the loss. 286 F.Supp. at 725.

Each of these decisions implicitly applies a fundamental principle of our jurisprudence, that civil liability does not normally attach unless a defendant's acts have somehow caused the injuries of the plaintiff. This necessary causal link is lacking for all claims of plaintiffs for injuries arising before the moving defendants had any interest or control over the Colorado City development. Absent such a link, the court must reject plaintiffs' attempt to hold these

---

**1.** Defendants do not concede liability for any payments made after they purchased their respective interests in GWU. They merely limit this motion to issues relating to liability for payments before that time.

defendants as aiders and abettors for payments made before they acquired their interests in GWU.

For similar reasons, the court also rejects plaintiffs' argument that defendants are liable as co-conspirators for acts committed before they acquired their interest in GWU. Again, plaintiffs cite only criminal cases to support this theory of liability. And, as defendants aptly point out, in criminal law, the very act of conspiracy alone is condemned and punishable as a criminal offense. However, no independent cause of action exists under the securities laws relied on by plaintiffs for civil conspiracy; plaintiffs must prove either direct primary liability or liability as an aider and abettor. A causation element is incorporated into both of these theories of civil liability so that a victim may be compensated only for injuries caused by a defendant. To hold these defendants liable under plaintiffs' conspiracy theory would violate fundamental concepts of civil law by imposing liability for injuries not caused by them. The court therefore rejects plaintiffs' conspiracy theory as a basis for holding the moving defendants liable for acts performed by others or payments made before they acquired their respective interests in GWU.

After the issues discussed above were fully briefed and presented to the court, the plaintiffs in the *Adair v. Hunt* case, 79 C 4206, requested and were granted leave to file an amicus brief on the issues raised in defendants' motion.[2] In their memoranda, the *Adair* plaintiffs assert an additional basis for holding the moving defendants liable for acts or payments made before they acquired their interests in GWU. They contend that these defendants "lulled" the plaintiffs through misrepresentations and deception after they assumed control of GWU, and, on the basis of this lulling activity, are fully liable as primary wrongdoers for all damages incurred by the *Kaliski* and *Adair* plaintiffs.

As factual support for this theory, the *Adair* plaintiffs describe at length evidence

they contend demonstrates that the Hunts had knowledge of the alleged fraud but failed to communicate this knowledge to the plaintiffs, and instead covered up the fraud and lulled plaintiffs into not asserting their rights. As legal support for their "lulling" theory, the *Adair* plaintiffs rely on a number of cases in which the defendants, having perpetrated an original fraud, were also held liable for lulling activities occurring after the original fraudulent transaction. *See, e.g., Peoria Union Stockyards Co. v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983); *SEC v. Holschuh*, 694 F.2d 130, 142–44 (7th Cir. 1982); *U.S. v. Shelton*, 669 F.2d 446, 458 (7th Cir.1982); *Hoglund v. Covington County Bank* [1977 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,910 (M.D.Ala.1977), *affirmed on rehearing*, [1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,003 (M.D.Ala.1973). These cases do not support the proposition that a defendant involved in later lulling activities can be held primarily responsible for the acts of other parties who committed the original acts of fraud, when there was no connection between the defendants and the original defrauders at the time the original fraudulent acts were committed. No support for such sweeping civil liability has been cited or found, and, as discussed above with respect to the plaintiffs' aiding and abetting and conspiracy theories, to uphold the plaintiffs' theory would impose liability when there is no causal link between the acts of the defendants and the injuries actually suffered.

The cases cited by the *Adair* plaintiffs do, however, provide some support for plaintiffs' assertion that the moving defendants can be held primarily liable for damages incurred as a direct result of their lulling activities, i.e., for payments received after they assumed control of GWU, learned of the alleged fraud, and took action to perpetuate the fraud to induce continuation of payments by plaintiffs for their own benefit. In *Peoria Union*, the

---

**2.** The plaintiffs in *Adair* are a group of approximately 2,000 Colorado City land owners joined

in a virtually identical action against the same defendants.

plaintiff purchased a pension plan from defendant Penn Mutual under which the plaintiff was required to make annual contributions. The plaintiff alleged that Penn Mutual had made misrepresentations in connection with the original purchase of the plan and in yearly deposit fund summaries. The court rejected Penn Mutual's statute of limitations defense, finding that the misleading statements and omissions in the annual summaries prevented the plaintiff from becoming aware of the fraud and therefore tolled the statute of limitations. The court then stated:

> These "lulling activities" would be actionable as part of the original sale of the group deposit administration's annuity even if that sale had otherwise been complete in 1971, see *SEC v. Holschuh*, 694 F.2d 130, 143–44 (7th Cir.1982), but in fact the contract called for periodic contributions and was therefore a continuing contract. To keep these contributions coming through fraud was fraud in connection with the continuing sale of a security.

698 F.2d at 326.

Although the above-quoted language is dicta, it indicates that lulling activities which induce the continuation of installment payments is primary fraud actionable under the securities acts. As noted above, the same defendant in *Peoria Union* who perpetrated the original fraud through the "sale" of the annuity also performed the lulling activities. However, this distinction does not affect the conclusion that, under the language quoted above and basic principles of fairness, the defendants could be held primarily liable for fraud resulting from their own knowledge and actions after they acquired control of GWU. If the defendants' acts after they assumed control of GWU constitute fraud from which they profited, and as a result of this fraud, the plaintiffs were directly injured by being induced to continue payments on the land contracts, the defendants' acts would be the proximate cause of the plaintiffs' injuries. Defendants could then fairly be held liable for these acts. The court therefore concludes that, although the moving de-

fendants cannot be liable by virtue of the alleged "lulling" activities for the acts of others before they acquired their respective interests in GWU, they may be held liable for these lulling activities to the extent they fraudulently induced continuation of payments by the plaintiffs after they gained control of GWU.

Since the court has rejected all the bases proffered by plaintiffs for holding these defendants liable for acts committed or payments made before they acquired their respective interests in GWU, summary judgment is appropriate on plaintiffs' securities claims to the extent they allege injuries arising before November, 1974 with respect to the Hunts, and before February, 1978 with respect to HIRCO. Accordingly, the court hereby grants summary judgment in favor of the moving defendants on all the claims under the securities acts of the Kaliskis and Carole Kovich, and on the claims under the securities acts of the Housers against N.B. Hunt and W.H. Hunt for payments made prior to November, 1974, and against HIRCO for payments made prior to February, 1978.

### Interstate Land Sales Full Disclosure Act

■ Defendants also seek summary judgment on all of plaintiffs' claims under the ILSFDA. The ILSFDA was enacted on October 1, 1968, but did not become effective until April 28, 1969, almost three months after the last land sales contract entered by any of the plaintiffs in this case was signed. Defendants contend that the Act should not be given retroactive effect, and that it is therefore inapplicable to the plaintiffs' contracts. Defendants rely on *Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045 (S.D.N.Y.1975). In *Davis*, the court examined the ILSFDA and its legislative history, and determined that, since there is no indication of a legislative intent that the Act apply retroactively, it should not be given retroactive effect. The court therefore held the Act inapplicable to a real estate sales contract entered before the effective date of the act, even though the

contract called for installment payments for a substantial period of time later than the effective date of the Act. The court reasoned that, upon execution of an installment land contract, equitable title vests immediately in the purchaser, and the agreement is binding and complete at that time. 401 F.Supp. at 1048. The court therefore refused to apply the Act despite the fact that continuing payments were required under the contract after the effective date of the Act.

Defendants assert that, under *Davis,* since plaintiffs' sales contracts were executed before the ILSFDA was effective, the act is inapplicable to their claims. This court concurs in the reasoning and general conclusion of the *Davis* court that the Act was not intended to be given retroactive effect. As plaintiffs assert, however, a later decision distinguished *Davis* on the basis that the plaintiff in *Davis* did not allege continuing misrepresentations and omissions after the effective date of the Act. *Husted v. Amrep. Corporation,* 429 F.Supp. 298 (S.D.N.Y.1977). Although the *Husted* court did not specifically address the retroactivity issue presently before this court, its analysis is relevant.

The plaintiffs in *Husted* sued the sellers of undeveloped land for, among other things, misrepresentations made to induce continued payments under the installment land sales contracts. The court noted that § 1703(a)(2)(B) of the ILSFDA, 15 U.S.C. § 1703(a)(2)(B), makes it unlawful "in selling or leasing . . . to obtain money or property" by means of misrepresentations on which the purchaser relies. The court concluded that, in light of the remedial purpose of the entire ILSFDA, and the common practice of selling undeveloped land by conditional sales contracts in which the seller retains a substantial incentive to induce continued payments, a defendant can be held liable under § 1703(a)(2)(B) for making misrepresentations to purchasers to induce continuing payments and additional purchases. 429 F.2d at 308.

This court agrees that § 1703(a)(2)(B) applies to this type of misrepresentations

made after an installment contract is entered to induce continued payments under the contract. Although the act cannot be given retroactive effect to cover any alleged misrepresentations made to induce plaintiffs in this case to execute their contracts, to hold defendants liable for any misrepresentations made by them after the effective date of the act to induce continuation of payments does not apply the act retroactively. The plaintiffs' allegations of misrepresentations made by defendants to induce continued payments may therefore be actionable under the act. The court therefore cannot dismiss all of plaintiffs' claims under the ILSFDA as requested by defendants.

■ However, nothing in the ILSFDA and no theory espoused by plaintiffs supports imposition of liability on defendants under the act for alleged fraud committed by others with whom the defendants had no connection until after they purchased their respective interests in GWU. Defendants are therefore entitled to judgment on plaintiffs' claims under the ILSFDA for all payments made before November, 1974 with respect to N.B. Hunt and W.B. Hunt, and for all payments made before February, 1978 with respect to HIRCO.

Since the Kaliskis and Carole Kovich made all payments under their contracts prior to November, 1974, the moving defendants are entitled to summary judgment on all of their claims under the ISFDA. In addition, N.B. Hunt and W.H. Hunt are entitled to summary judgment for claims of the Housers under the ILSFDA for payments made prior to November, 1974, and HIRCO is entitled to summary judgment for all claims of the Housers under the ILSFDA for all payments made prior to February, 1978.

### Conclusion

Accordingly, summary judgment is granted in favor of all moving defendants on the claims of the Kaliskis and Carole Kovich under the securities acts and the ILSFDA. Summary judgment is granted in favor of N.B. Hunt and W.H. Hunt on all

claims of the Housers under the securities acts and the ILSFDA for payments made prior to November, 1974. Summary judgment is granted in favor of HIRCO on all claims of the Housers under the securities acts and the ILSFDA for payments made prior to February, 1978.